# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. **07 - CV - 02698**
(To be supplied by the court)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 27 2007

GREGORY C. LANGHAM
CLERK

AHMED ABDEL SATTAR , Plaintiff,

v.

ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED STATES,

John Does, FBI Agents ,

R. Wiley, ADX WARDEN ,

Michael K. Nalley, Regional Director,

HARREL WATTS, Administrator ,

National Inmate Appeal. ,

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 17 2007

GREGORY C. LANGHAM
CLERK

_____ ,

_____ , Defendant(s).

(List each named defendant on a separate line.)

## PRISONER COMPLAINT

(Rev. 1/30/07)

## A. PARTIES

1. Ahmed Abdel Sattar, # 53506-054, United States
   (Plaintiff's name, prisoner identification number, and complete mailing address)
   Penitentiary- MAX ("ADX"), P.O. Box 8500, Florence, Colorado 81226-8500

2. ALBERTO GONZALES, Attorney General of The United States
   (Name, title, and address of first defendant)
   Department of Justice, Constitution Ave. & 10th st. N.W. Washington DC, 20530
   At the time the claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:
   Acting under Federal Law, Federal Government
   official

3. John Does, Federal Bureau of Investigation ("FBI") Agents "unknown"
   (Name, title, and address of second defendant)
   FBI, 935 Pennsylvania Ave, N.W., Washington D.C., 20535
   At the time the claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:
   Acting under Federal Law, Federal Government Agents

4. R. Wiley, Warden, U.S. Penitentiary- MAX ("ADX")
   (Name, title, and address of third defendant)
   P.O. Box 8500, Florence, CO. 81226-8500
   At the time the claim(s) alleged in this complaint arose, was this defendant acting under
   color of state law? ___ Yes ✓ No (CHECK ONE). Briefly explain your answer:
   Acting under Federal Law, A warden of Federal
   Prison

(If you are suing more than three defendants, use extra paper to provide the information
requested above for each additional defendant. The information about additional defendants
should be labeled "A. PARTIES.")

## "A. PARTIES"

5. FOURTH DEFENDANT: Michael K. Nalley, Regional Director of Bureau of prisons, 400 State Ave., Tower II, 8th Floor, Kansas City, Kansas, 66101-2492

— Was this defendant acting under color of state Law?
— Yes ✔ No
Defendant Acting under Federal Law, Director of Federal Regional Bureau of prisons.

6. FIFTH DEFENDANT: Harrel Watts, Administrator of National Inmate Appeal.
Federal Bureau of prisons ("B.O.P.") — central office, 320 First street, N.W, Washington D.C. 20534

— Was this defendant acting under color of state Law?
— Yes ✔ No
Defendant Acting under Federal Law, An Administrator in central office of The Bureau of prison (Federal)

**B. JURISDICTION**

1. I assert jurisdiction over my civil rights claim(s) pursuant to:  (check one if applicable)

    _____ 28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

    ___✓___ 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2. I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

    _____ N/A _____

    _____

**C. NATURE OF THE CASE**

**BRIEFLY** state the background of your case.  If more space is needed to describe the nature of the case, use extra paper to complete this section.  The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

1- Plaintiff is an American citizen

2. The plaintiff was incarcerated in another Federal correctional center ("MCC. N.Y.") since his arrest in April 9th 2002 until December 19th 2006

3. The plaintiff is serving (24) Years prison sentence For his conviction in The united states District court in The suthern District of New York, on three counts of  1-conspiracy To defraud The united state Government, 2- conspiracy To murder in a foreign Country, 3- solicitation of crime of violence

"C. NATURE OF THE CASE"

4. Throughout The plaintiff incarceration until February 2006 The plaintiff had all of The privileges and rights offered To other inmates such as: contact visits with Family, relatives, Friends, Lawyers, news media. Correspondence with out any restrictions with Family, Friends, relatives, Lawyers, news media, religious institions, Access To daily news papers and magazines. subscriptions To daily news papers, magazines, Listening To The Radio with out restriction including NEWS stations. Joining and receiving books From book clubs including religious and politecal books with out restrictions. Communicating with other inmates with out restrictions and even having cell mates needless To say many of Them, recreation, Exercise, play games with other inmates with out restrictions or limits.

5. Throughout The plaintiff incarceration For The past (6) years all of his Telephone calls were monitered very closely and Translated as well.

6. Throughout The plaintiff incarceration plaintiff never encouraged violance, nor he condoned it in any way or Fashion.

• 5 •

"C. NATURE OF THE CASE."

7. Throughout The plaintiff incarceration until The "special Administrative measures" ("SAM") was imposed on him The plaintiff _NEVER_ received any incident report or even a warning for violating any of The B.O.P. Rules or regulations.

8. On February 2nd 2006 The plaintiff was removed From his unit at m.c.c. N.Y. and placed in The most restricted ward "high security" in mcc. called 10 south Where They Confiscated all his properties including his Radio, Watch, Newspapers, Magazins, Books, Family, Friends photos and letters.

9. On The same day plaintiff was Told That a special Administrative measures ("SAM") was implemented on him by The united states Attorney General and The plaintiff was provided with a copy of it ("see Exhibit A").

10. On December 19th 2007 plaintiff was Transferred To The US penitentiarry_MAX at Florence colorado "ADX" coming From New York m.c.c.

## "C. NATURE OF THE CASE."

11. On January 23rd 2007 The "SAM" restrictions were renewed ("see Exhibit B") and continued To deprive The plaintiff of many rights and privilegs That he had For almost (4) years. This with out giving The plaintiff any hearing. Some of The rights and privileges The plaintiff has lost due To The "SAM" restrictions are but not limited To: not allowed To correspond with relatives and Friends only immediate Family ("see Exb. B article 3.g"), not allow my adult children To visit me Together or with their mother ("Exb. B.article 3F iii (4)"), not allowed To share a cell with another inmate ("Exb. B. article 6.a") not allowed To Talk To another inmate ("Exb.B. article 6.b"), restricting my communications with my Family in my native Tongue ("Exb.B. Article 3F ii"), delay of non English mail outgoing/incoming For periods of more Than (3) months and English mail of one month delay ("Exb. B. article 3giiiiv (a)(b)"), rejecting all subscriptions To Newspapers and Magazins That The plaintiff had and not allow The plaintiff To subscribe To any newspapers or magazines save National Geographic magazine, remove The plaintiff From his unit where he had cell mates, access To outside group, contact recreation, contact visit with Family, Friends, relatives, Lawyers, To a high security ward in mcc. and then To special security

## "C. NATURE OF THE CASE."

unit "SSU" in Total segregation not allowed access To T.V. or Radio news channels/stations, not allowed To correspond with Lawyers or Law advocates, constitutional rights organizations To seek help or solicit them To fight this infringement on my Human and constitutional rights.

12.    The F.B.I. Agents, John Does, are assigned To enforce The "SAM" restrictions and handle all requestes submited by The plaintiff To The "ADX" staff including but not Limited To: seeking approval of immediate family phone numbers, subscription To News papers and magazines, purchasing books regular or religious, F.B.I. agents also handles plaintiff's incoming — outgoing mail and process it according to The "SAM" restrictions and some Times beyond The restrictions and delay English mail for monthes.

13.    Since The "SAM" has been renewed on The plaintiff and since his Transfer To The "ADX" prison The plaintiff had followed The "SAM" requirements and has submitted all his imediate family phone numbers To The "ADX" staff for approval by The F.B.I. Where all The numbers were rejected by The F.B.I. except one number and The rest of them The plaintiff was Told at first That they are "National security threat" including his wife, children, brother,

## "C. NATURE OF THE CASE"

sisters Telephone numbers and months later approving some of them with out explaintion !! its worth notable To say That all those numbers were approved by The F.B.I in New York when The plaintiff was held "in m.c.c. N.Y." and he used them under The "SAM" resterictions with out any incident.

14. The "ADX" staff provide The plaintiff with a daily issue of The USA—Today news paper but it has To be delayed at least for one month with several pages and sections removed due To The "SAM" restrictions.

15. Since The "SAM" has been imposed on The plaintiff not a single publication publication subscription request was approved by The F.B.I. except The national Geographic Magazine and all The Newspapers and magazines subscriptions The plaintiff had were stopped or withheld and return To sender by B.o.p staff once The "SAM" was implemented.

16. Since The "SAM" has been imposed on The plaintiff in February 2006 there has been noticeable if not outrageous delay in his mail where some of The plaintiff incoming English mail from his minor children Took more than 4 months To be deliverd To

"C. NATURE OF THE CASE."

him from Staten Island, N.Y. To MCC. N.Y. ("Less than 20 minutes ride") furthermore The delay still continuing at The "ADX" due To The "SAM" restrictions.

17. Since The plaintiff incarceration had an incident report or charged with any misconduct until The "SAM" was imposed on him.

18. The plaintiff has a clean conduct record at The "ADX" and did not receive any incident report until now.

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action.  For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific cases to support your claim(s).  If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s).  The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1.   Claim One: The defendants violated the plaintiff's First Amendment Rights, By implementing and imposing The "SAM" Document.

Supporting Facts:

19.  The plaintiff realleges and incorporates by reference his assertions in paragraphs 1 through 18 as if Fully restated herein.

20.  In The manner described here in 1 through 19 and The paragraphs of this claim, The defendants Gonzoles, John Does, Wiley, Nalley, and Watts acted in conceret and deprived The plaintiff of his rights granted by The First Amendment To The united states Constitution when they implemented and imposed The "SAM" restrictions document.

21.  Defendant Gonzales, The united states Attorney General has orderd The Bop officials on January 24, 2006 To impose and implement The special Administrative measures "SAM" restrictions document on The plaintiff. The "SAM" is one document consist of numerous restrictions That deprived The plaintiff of his First Amendment rights and

## "D. CAUSE OF ACTION."

Other Constitutional rights as well. Some of the restrictions are but not limited To (See Exb. B. The "SAM"):

a — "SAM" article 1. a gives control and priority To whatever is more restrictive The B.O.P. policy or The "SAM" restrictions.

b — "SAM" article 1.C out line all of The plaintiff communictions Prohibitions with The exception of what The "SAM" allows, (only immediate family members are allowed).

c — "SAM" article 2.a Footnote (1), defines The only attorney The plaintiff is allowed To Correspond / communicate with is The "attorney of record"; The only attorney of record The plaintiff has is his Court appointed attorney for his Crimenal case.

d — "SAM" article 2. i Footnote (6), difines what is legal mail as mail addressed To or from The inmate's attorney of record.

E — Non-legal mail is defined in "SAM" article 3.g. as "any mail not clearly and properly addressed to/from your attorney and marked "legal mail" (incoming and outgoing)" it also limit non legal mail To "only your immediate family, U.S. courts, Federal judges, U.S. Attorneys office, members of us Congress, Bop, other Federal Law enforcement entities, and if you are a citizen of a foreign country, a verified consular representative of That country." No Eceptions made for

## "D. CAUSE OF ACTION."

Seeking help of Lawyers or other law advocates groups.

F — "SAM" article 3.a.i restricts plaintiff non Legal Telephone calls "only To your imediate Family".

g — "SAM" article 3 F i restricts plaintiff non Legal visits "To only your imediate Family"

h — "SAM" article 3 F ii restricts plaintiff communications during imediate Family visits " ALL communications during non legal inmate visits will be in English unless a fluent FBI, USMS/BOP/DF— approved translator is readily available to contemporaneously monitor communiction / visit," and punish The plaintiff For it without knowing.

i — "SAM" article 3F iii 3 restricts plaintiff visits with wife, children, siblings "with out any physical contact".

J — "SAM" article 3 F iii 4 restricts The plaintiff Family visits To " one (1) adult visitor at a time." and prevint plaintiff's adult children From visiting him Together or with thier mother.

k — "SAM" article 3.g. iii 4 a,b and c. specify That The goverament could hold plaintiff's non—English mail Correspondence For (60) sixty business days and (14) business days For English mail To review and analyze, This process Caused excessive delay for plaintiff's mail sometimes go up To (4) Four monthes For an English mail such as an innocent poem on one

. 13 .

"D. CAUSE OF ACTION."

page letter From the plaintiff's minor daughter.

L — "SAM" article 4 Forbids plaintiff communications with News media.

m — "SAM" article 6.a.b. Forbids The plaintif From sharing a cell, communicating, making statments audible ▓▓ or by sending notes To other inmates

n — "SAM" article 8 a.b. along with "SAM" article 6 a.b. are designed To compeletely isolate The plaintiff in an inhuman way.

o — "SAM" article 10 restricts The plaintiff's access To News-papers, periodicals, and publication which they should be approved by The FBI, Bops, and The US Attorney For Southern district of New York, (see Exb. B article 10 a i) so far no publication, newspapers, Periadicals has been approved For The plaintiff except National Geographic magazine. also The Government will remove pages and sections From The publications such as but not Limited To: Advertisment, classified letters To The editor (See Exb. B. article 10 a ii).

p — "SAM" article 10 b. Forbids The plaintiff's access To Radio and Television News stations / channels.

Q — "SAM" 10 a iii restrict The plaintiff's access To News-papers, publications, periadicals, unless it has a delay of at leas thirty (30) days. (Exb-A article 10 a iii).

## "D. CAUSE OF ACTION."

It's clear that defendant Gonzales intended to have The above "SAM" restrictions imposed and applied on The plaintiff when he issued the "SAM" document. and intended To deprive The plaintiff of his First amendment right.

22. Once The "SAM" restrictions document was imposed on The plaintiff in February, 2006 F.B.I. agent, John Does, were assigned To enforce and implement The "SAM" restrictions document, since there are several "SAM" restrictions require direct involvement of The F.B.I. Further The F.B.I agents defendants John Does supervise and coordinate The implementation of The "SAM" with The "ADX" staff. The plaintiff does not know what F.B.I office The defendants John Does were appointed from. As instructed in The "SAM" document, The plaintiff submitted numerous requests to subscribe to News papers and magazines, all requests were denied by The defendants John Does except For National Geographic magazine, The denials were communicated To The plaintiff through "ADX" staff. The defendants John Does are also in charge of approving The plaintiff's immediate family Telephone numbers, Further, defendants John Does are The actual party in charge of translating, processing, analysing, and delaying The plaintiff' correspondence incoming/outgoing For (60) business days For nonEnglish

"D. CAUSE OF ACTION."

mail and (14) days for English mail according to The "SAM" restrictions but in actualty The mail is delayed for many months by The defendant. beyond The "SAM" restrictions (as it was shown in paragraph "21.K.") also The defendants Joh Does would only process mail that allowed by The "SAM" restriction where not even solicting a lawyer is permited in The "SAM" document. For all of The above reasons The defendants John Does are willing participants in depriving The plaintiff of his First amandment rights.

23    Defendant, R. Wiley is The "ADX" warden he is in charge of The plaintiff confinement condition and all other related matters. Defendant Wiley is an important participant in applying, renewing and implementing on The plaintiff The "SAM" restrictions document dated January 23rd, 2007 as it's written, enforcing every single restriction in it as The document instruct. Defendant Wiely stops and rejects all incoming mail sent To plaintiff from friends and relatives, also he stops and rejects all incoming publications The plaintiff had befor The "SAM". on Febraury 8th, 2007 The plaintiff filed an administrative remedy request in The defendant office seeking The removal of all The "SAM" restrictions (see Exb. C. Case No. 442936-F1). On March

• 16 •

"D. CAUSE OF ACTION."

1st, 2007 defendant Wiley responded To The plaintiff's request for relief with "your request is DeNied". (See Exb. C, response Case No. 442936-F1). By denying The plaintiff's request for relief defendant Wiley Failed To remove all "SAM" restrictions imposed on The plaintiff, such restrictions (above para. 21) Violates The First Amendment.

24. Defendant, Michael K. Nalley The Regional Director of The BOP North Central region, received administrative remedy Appeal Filed by The plaintiff on March 6th, 2007 requesting ("The removal of The "SAM""") (See Exb. C. Case No. 442936-R1), defendant Nalley responded To The plaintiff's Appeal with "your request is denied", Further defendant Nalley also stated That The BOP has no Authority To "impose or resind" The "SAM" (See Exb C. response Case No. 442936-R1). Defendant Nalley Failed To Correct, amend, or remove The imposed "SAM" restrictions therefore he is a participant in violating The plaintiff's First Amendment rights.

25. Defendant Harrel Watts, is The Administrative of National Inmate Appeal at The BOP Central Office in Washington D.C. On April 23rd, 2007 The plaintiff Filed his "Central office ~~~~~~~ Administrative Remedy Appeal" with this defendant, The plaintiff requested to "Remove The SAM"

· 17 ·

## "D. CAUSE OF ACTION."

(See Exb. C, Case No. 442936-A.1). Defendant Watts responded To The plaintiff's Appeal on June 28th, 2007 by stating "Your Appeal is denied" (See Exb. C. response Case No 442936-A1) Defendant Watts is a participant in Violating The plaintiff's First Amendmant rights, since he has refused to remove, correct or amend The "SAM" restrictions document and also he Failed To FullFil his reponsibility.

26. The plaintiff prior to The "SAM" restriction document being imposed on him on February 2nd, 2006, had No restrictions whatsoever. As a matter of Facts The plaintiff had several Newspapers and magazines subscriptions, had correspondence with Friendes and relatives, had received contact visits, had TelePhone calls with relatives, Friends and FamiLy, No outrageous delays of his mail, communicate and share a cell with other inmates. The aforementioned defendants deprived The plaintiff From all of his rights and priv/lages including Those mentioned in This paragraph and The paragraphs above.

27. As a result of The actions, directions, orders, Failing To act or correct or amend or remove The numerous "SAM" restrictions in The "SAM" document imposed and implemented

"D. CAUSE OF ACTION."

On The plaintiff by The aforementioned defendants caused The plaintiff irreparable harm due To The violation of his rights secured and granted by The First Amendment of The united states Constitution.

2. Claim Two: <u>The defendants violated The plaintiff's substantive due process,</u>

Supporting Facts: Procedural due process and equal protection rights when The "SAM" was imposed.

28. The plaintiff realleges and incorporates by reference his assertions in paragraphs 1 through 27 as if fully restated herein.

29. In The manner described herein 1 through 27 and The paragraphs of this claim, The defendants, Gonzales, John Does, Wiley, Nalley and Watts acted in concret and deprived The plaintiff of his rights To due process and equal treatment when they imposed and implemented The "SAM" restrictions.

30. On January 24th, 2006 defendant Gonzales, orderd and directed The BOP officials To impose, implement and enforce The "SAM" restrictions document on The plaintiff depriving him of numerous constitutional rights and privileges (see Exb. B. and above para 21). Defendant Gonzales did not provide The plaintiff any hearing To argue against The "SAM" document and The government actions That deprived him of his constitutional rights and privileges. The plaintiff was never charged with any wrong doings or violation To be punished.

"D. CAUSE OF ACTION."

31. Defendants John Does, F.B.I. agents once The "SAM" restrictions were imposed on The plaintiff, John Does were assigned To enforce, monitor, and implement The "SAM's" numerous restrictions in coordination with The "ADX" warden and other Bop officials in accordance To various "SAM" articles. Defendants John Does process every request submitted by The plaintiff such as Seeking approval To subscribe To various periodicals, The defendants John Does always denied plaintiff's requests with out providing him with out a due process To appeal or challenge The defendant's denial. ALso in order For The plaintiff To an immediate family visitor or Telephon number, or call or correspond with them, they must be verified and approved by F.B.I. agents John Does in a case of F.B.I. agents denial, which happens most often, The plaintiff has no due process to appeal The agents decisions To a higher F.B.I. authority. It's known That The Defendants John Does are FBI agents who report and answer directly To The FBI not The B.O.P. The plaintiff has no due process when it comes To FBI agents decisions.

32. Defendant wiley The "ADX" Warden renewed and implement The "SAM" restrictions document on The

21

## "D. CAUSE OF ACTION."

plaintiff which lead To re classification of The plaintiff's custody level, and placing him in Total segregation in Special security unit "ssu", as a result The plaintiff lost most of his rights and privileges That he had prior To The "SAM" restrictions (See para. 21 above and Exb.B). This renewal and implementation Took effect with out offering The plaintiff a hearing To argue against any allegations or against The government actions That deprived him of many rights, nor he was allowed To defend himself by calling witnesses.

33. Defendant Nalley is The Bop regional Director, part of his responsibilities is To ensure That all of The Bop officials in his region adhere To The Bop policy, due process of The law and regulations, after The "SAM" was imposed, The plaintiff submitted a grievence appeal To defendant Nalley's office on ~~April~~ march 6th, 2007 (Exb.C case No 442936-R1). in which The plaintiff complained about The "SAM" restrictions and it was imposed on him unjustly with out commiting any wrong doings or violations or any one ever claim That The plaintiff posed a threat To National security since his inceration on April 9th, 2002 until The "SAM" restrictions was imposed on him on February 2nd, 2006. The defendant Nalley failed To investigate The

. 22 .

"D. CAUSE OF ACTION."

matter and ensure That The plaintiff's rights were protected according to due process of The Law.

34. Defendant Watts, The administrator of National inmate appeal received a grievence appeal Filed on April 23rd, 2007 (Exb c. case No. 442936-A1) in which The plaintiff requested The removal of The "SAM" document and The restrictions imposed on him unjustly, without due process. Defendant Watts responded on June 28th, 2007 (Exb. c. response case No 442936-A1) by denying all of The plaintiff requests. Defendant Watts failed To ensure that due process rights of The plaintiff are protected after The "SAM" restrictions were imposed.

35. Defendant Wiley and his agents/staff are violating The plaintiff right of equal treatment by not Treating him equally as they treat other inmates at The "ADX" since The plaintiff arrived at it on December 19th, 2007 and until The present time because of The "SAM" restrictions were imposed and renewed on him. As The ADX Warden Knows That The plaintiff received all rights and privileges as other inmates until The "SAM" was imposed on him. but after The "SAM" The plaintiff lost most of his rights and privileges and received different treatment such a S

"D. CAUSE OF ACTION."

but not limited to:

— unlike other inmates The plaintiff is not allowed To receive or subscribe To Newspapers, magazines, and priodicals except national Geographic magazine.

— unlike other inmates The plaintiff must remain in leg shackles during a non-contact Visits with his wife, children or during non-contact visits with his Lawyer.

— unlike other inmates plaintiff is given Two phone calls amounth insted of four and staff select what day and what Time not The plaintiff.

— unlike other inmates The plaintiff is not given The opportunity To participate in programs That would Progress him To a less restrictive unit and ultimately To be Transfered To a regular us prison.

— unlike other inmates The plaintiff has no access To The "ADX" main Leisure and religious Library but provided With a Limited List called "H. unit List." For The "SAM" inmates

— unlike other inmates The plaintiff is not allowed To Correspond, call or visit with relatives and Friends.

36   As a result of The actions, directions, failure To act or correct The violation of The plaintiff rights, The plaintiff due process and equal rights were violated also by The aforementioned defendants.

. 24 .

**3.** Claim Three: The defendants violated The plaintiff's
Fourth amendment right, unreasonable
Search and Seizure

Supporting Facts:

37. The plaintiff realleges and incorporate by reference his
assertions in paragraphs 1 through 36 as if fully
restated herein.

38. In The manners described in 1 through 36 and in
The paragraphs of This claim, defendants Gonzales,
John Does F.B.I. agents and Wiley acted in conceret and
deprived The plaintiff of his rights secured and granted
by The Fourth amendment of The constitution when
they imposed and implemented The "SAM" restrictions
document.

39. Defendant Gonzales on January 24th, 2007 ordered
and directed The Bop officials to impose and implement
The "SAM" restrictions document on The plaintiff.
Among The numerous restrictions in The "SAM" Some
That constitute an unreasonable search. "SAM"
article 3.g. iii 4 ab and c states That The federal
government would hold, delay analyise and review The
plaintiff non—English mail for a period of (60) Sixty

## "D. CAUSE OF ACTION."

business days in order To complete analysis and search and (14) business days For English mail. Further in The "SAM" document article 10 a. ii and iii The Federal government would remove sections From any Newspapers and periodicals prior to delivering it To The plaintiff after a (30) thirty days delay. That if The plaintiff should be approved To subscribe To such periodical or News papers.

40. Defendants John Does, F.B.I agents, were assigned To enforce, monitor, and implement The "SAM" restrictions document once it was imposed on The plaintiff in coordination with The ADX warden and his staff. Defendant John Does are The actual one who would Translate, hold, delay, search and review The plaintiff's outgoing/incoming mail in accordance with The "SAM" restrictions Further defendants John Does according To "SAM" article 10 a(i) decide in consultation with The Bop and USA/SDNY what sections to remove From periodicals/News papers The plaintiff may subscribe To, pluse a (30) days delay prior To delivery. These actions by defendants John Does shows That They are direct participants in violating The plaintiff's Fourth amendment rights.

"D. CAUSE OF ACTION."

41.    Defendant Wiley is a participant in depriving The plaintiff of his Fourth amendment rights, The plaintiff deals directly with The defendant or his designee staff with respect to his incoming and outgoing mail, The plaintiff Turn in his outgoing mail and receive his incoming mail From The "ADX" staff. Weather it's incoming or outgoing The mail is delayed according To The "SAM" restrictions articles discussed in paragraph (39). Defendant Wiley and his designees are Fully aware of The mail delay weather (60) sixty or (14) Fourteen Business days since he and his staff are The actual handler of The plaintiff's mail. Also defendant Wiley is The one who signed The Notification of The "SAM" and he is in charge of implementing every article in it. Further defendant wiley <u>DENIED</u> The plaintiff's grievance requesting The removal of The "SAM" restrictions (EXb C. Case No. 442936-F1) in addition Defendant Wiley provide The plaintiff with several sections removed From The U.S.A.-Today Newspapers issues That he delay For (30) thirty days. Further more defendant Wiley does not allow The plaintiff To Seal any outgoing mail To The courts or For any other legal matters For The purposes of searching / reading such mail. Defendant Wiley by his action Failed To correct or amend The violations of The plaintiff rights and There For he is

. 27.

## "D. CAUSE OF ACTION."

an active participant in these violations.

42. As a result of the actions, directions, failure to act or correct the "SAM" restrictions imposed on the plaintiff by the aforementioned defendants, they have caused the plaintiff a deprivation of his rights secured and granted by the fourth amendment to the united states constitution.

4. Claim four: The defendans deprived the plaintiff of his sixth amendment rights, to have a lawyer or solicit legal assistance.

43. The plaintiff realleges and incorporate by reference his assertions in paragraphs 1 through 42 as if fully restated herein.

44. In the manners described herein 1 through 42 and in the paragraphs of this claim, defendants Gonzales, John Does, Wiley, Nalley, and Watts, acted in conceret and deprived the plaintiff of his rights secured and granted by the sixth amendment rights when they imposed and implemented the "SAM" restrictions Document on him.

. 28 .

## D. CAUSE OF ACTION."

45. On January 24th, 2006 Defendant Gonzales orderd and directed officials of The B.O.P. To impose and implement The "SAM" restrictions document in it's entirety On The plaintiff. The "SAM" restrictions document is one document That consists of numerous restrictions (see Exb. B.) some of These restrictions are a clear violation of The plaintiff sixth amendment rights. under The "SAM's" "inmate communications prohibitions", The plaintiff is Told and instructed "You are Limited.... from having contact (including passing or receiving any oral, written or recorded communications) with any other inmate, visitors, attorney, or anyone else except as out lined and allowed by this document....." (See Exb. B. article 1.C.). The outlined and allowed communications by this document are immediate family members "with limitations" and with out Limitations "US courts, Federal Judges, U.S. Attorneys office....." (see Exb B. artical 3g. i, ii) in "SAM" article 2a i, ii and iii and 2a footnot 1 outlined and allowed The plaintiff To communicate with his attorney of record, The only attorney of record The plaintiff has is The court appointed attorney who represented him in his Criminal case. Accordingly No correspondences are allowed with Lawyers or Law advocate groups For soliciting a representation To help fight The "SAM" restrictions document

## "D. CAUSE OF ACTION."

Since they are <u>not</u> out Lined or allowed by The document. Also any mail *written* by The plaintiff to a party not outlined and allowed by The "SAM" is regected. The "SAM" makes no exceptions To it's articles.

46. Defendants John Does are The F.B.I. agents assigned To enFore, implement and monitor, make sure That every "SAM" restrictions article is carried out and imposed on The plaintiffs, John Does Will not releas any of The plaintiff's Correspondence unless it's out Lined and allowed by The "SAM" document as discussed in paragraph (45) above. Defendants John Does are enforcing "SAM" articles 1.c, 2.a, 3g. Which leaves The plaintiff with out a chance To solicit Lawyers or Law advocates through correspondence becuse such correspondence is not outlined and allowed by The "SAM"

47. The "ADX" Warden defendant wiley is fully aware of The "SAM" restrictions document and every single Item and restriction in it since it has his signature and he is The one who must ensure it's implementation on The plaintiff, As discussed in paragraph (45) The plaintiff is prohibited from corresponding with any one except those outlined and allowed by The "SAM"

"D. CAUSE OF ACTION."

restrictions document. On February 2nd, 2007 The plaintiff filed an administrative remedy request with The office of Defendant wiley seeking To remove all restrictions (Exb. C. case No 442936_F1) on March 1st, 2007 defendant wiley DENIED The plaintiff request (Exb. C. response case No 442936_F1), By doing so The defendant failed To correct or remove The unconstitutional restrictions in The "SAM" document.

48. Defendant Nalley is The Bop Regional Director in charge of all Bop prisons in his region, on March 6th, 2007 The plaintiff filed a regional administrative remedy appeal To The "ADX" warden denial, in That appeal The plaintiff asked The defendant To over Turn The warden decision and remove The "SAM" restrictions (Exb. C case No 442936_R1) on April 9th, 2007 defendant Nalley DENIED The plaintiff's appeal (Exb C. case No 442936_R1 response.) Defendant Nalley's failing To remove or amend The "SAM" restrictions violated The plaintiff rights To Correspond and solicit a lawyer or law advocate in violation of The sixth amendment. The defendant is a participante in these violations since he is aware of The "SAM" restrictions and refused To Correct or remove them.

"D. CAUSE OF ACTION."

49.  Defendant Watts is The administrator of National Inmat appeal, On April 23rd, 2007 The plaintiff Filed with defendant Watts's office a Central office administrative remedy appeal seeking To remove The "SAM" restrictions document (Exbc. case No. 442936-A1), On June 28th, 2007 defendant Watts DENIED The plaintiff's appeal (Exb. C Case No 442936 response), The defendant is aware of The "SAM" document and knows of The restrictions in it, by Failing To remove or correct these violations of The plaintiff' rights and his awareness of it Defendant Watts is a participant in This claim.

50.  As a result of The actions, directions and failure To act or Correct or remove or amend The "SAM" restrictions imposed on The plaintiff by The aforementioned defendants caused The plaintiff deprivation of his rights secured and granted by The sixth amendment To The constitution To solicit a lawyer by correspondence or solicit legal assistance by corresponding with law advocates.

5. Claim Five: The defendants violated The plaintiff eighth amendment rights, by imposing and implementing The "SAM" document

51. The plaintiff realleges and incorporates by reference his assertions in paragraphs 1 through 50 as if fully restated herein.

52 In The manners described here in 1 through 50 and The paragraphs of This claim, The defendants, Gonzales, John Does, Wiley, Nalley, and Watts acted in conceret and deprived The plaintiff of his rights secured and granted by The eighth amendment ~~of the~~ To The U.S. Constitution, when They imposed, implemented The draconion "SAM" restrictions document.

53 On January 24th, 2006 defendant Gonzales has ordered and directed officials of The BOP To impose and implement The "SAM" restrictions document which restricted The plaintiff To some cruel and unusual punishment such as prohibiting The plaintiff from Talking To other inmates where he could and did spend monthes without Talking or communicating with other humans except BOP officials and staff. These cruel and unusual punshiment defendant Gonzales imposed on The plaintiff is very unusual in The Federal prison system where These "SAM" restrictions imposed

## "D. CAUSE OF ACTION."

and implemented on about (20) or (30) inmates, The plaintiff is one of Them out of 170,000 inmates currently serving Time in The Federal system. on The Top of That if The plaintiff even Try To Talke To other inmates he is penalize For it. Defendant Gonzales action and orders are a violation of The plaintiff rights To The eighth amendment of The united states constitution.

54. Defendants John Does are The F.B.I agents assigned To enforce, implement, monitor That every "SAM" restriction article is carried out end imposed on The plaintiff, For That they are active participants in violating The plaintiff eighth amendment rights

55. Defendant Wiley The "ADX" warden is Fully aware of The "SAM" restrictions and implements every article in it on The plaintiff, and also refused To correct, amend or remove These restrictions For That he is a participant in violating The plaintiff's eighth amendment rights

56. Defendant Nalley is a participant in violating The plaintiff eighth amendment rights since he is aware of The violations and refued To correct, amend or

·34·

"D. CAUSE OF ACTION."

remove The "SAM" restrictions document

57. Defendant Watts is a participante in violating The plaintiff eighth amendment rights since he is aware of The violations and refused To correct, amend, or remove The "SAM" document.

58. As a result of The actions, directions and refusal To Act, correct, remove or amend The "SAM" restrictions imposed on The plaintiff by The aforemintioned defendants, they have caused The plaintiff a harmful and irreparable damge due To The violation of his eighth amendment rights of The united states constitution.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes ✓ No  (CHECK ONE).  If your answer is "Yes," complete this section of the form.  If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit.  The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1.  Name(s) of defendant(s) in prior lawsuit:

_____

2.  Docket number and court name:

_____

3.  Claims raised in prior lawsuit:

_____

4.  Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

_____

5.  If the prior lawsuit was dismissed, when was it dismissed and why?

_____

6.  Result(s) of any appeal in the prior lawsuit:

_____

## F. ADMINISTRATIVE RELIEF

1.  Is there a formal grievance procedure at the institution in which you are confined?

✓ Yes ___ No  (CHECK ONE).

2.  Did you exhaust available administrative remedies? ✓ Yes ___ No (CHECK ONE).

Original copies of administrative remedies and appeals are attached with The complaint as Exhibit "C."

(Rev. 1/30/07)

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

(A) Issue a declaratory judgment stating That:

The special administrative Measures "SAM" restrictions document imposed and implemented on The plaintiff by The defendants and their agents are unconstitutional measures and restrictions which violated plaintiff's rights under The First, Fourth, Fifth, Sixth, and eighth amendments To The united states constitution.

(B) Issue an injunction ordering The defendants, The Attorney General of The united states, Alberto Gonzales, F.B.I agents John Does, and R.

(Continue on additional papers)

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on  12-4-07
(Date)

Ahmed A. Habel sutton
(Prisoner's Original Signature)

## "G. REQUEST FOR RELIEF."

Wiley, The "ADX" Warden To:

1— Immediately remove The special administrative measures "SAM" restrictions document off The plaintiff.

2— Reinstate all rights and privileges The plaintiff had prior To January 24th, 2006 (The day The "SAM" document was Issued) and place The plaintiff in General population unit.

3— ALLOW and permit The plaintiff To have general correspondence With his relatives and friends without restrictions or Limits as he had prior To The "SAM".

4— ALLOW The plaintiff telephone calls and contact social and legal visits with his Lawyers, Family, relatives and Friends as he had prior To The "SAM".

5— ALLOW The plaintiff To subscribe To English and Arabic Newspapers and magazines as he did prior To The "SAM".

6— Allow The plaintiff To recive all of his active publications subscriptions he had prior To The "SAM"

7— ALLOW The plaintiff access To Radio and Television News stations / channels as he had prior To The "SAM".

8— Allow The plaintiff To purchase Arabic, English, religious, and politecal Books as he did prior To The "SAM"

9— NoT To delay or hold The plaintiff mail For monthes insted process The mail as it was prior To The "SAM" Like all other inmates.

"G. REQUEST FOR RELIEF"

10 — Allow The plaintiff access To Islamic religious
Conselor and group prayers.

11 — Not To remove any Sections/pages From any publications.

12 — Not To delay publictions/Newspapers and magazins For
30 days

C  Issue an injuction ordring defendant R. Wiley The
"ADX" warden and his staff To:
allow The plaintiff To Join The "ADX" step down program
and have The opportunity To progress to a less
restrictive unit where he could ultimately be
Transfered To another prison.

D  Issue a preliminary injuction ordering The defendants,
Gonzales, wiley, John Does To:

1 — Immediately allow The plaintiff To correspond with his
relatives and Friends

2 — Not To delay or hold plaintiff's mail For more than
one week

3 — immediately allow plaintiff To receive visits with
relatives and Friends

4 — immediately allow plaintiff To receive all of his active
subscriptions To newspapers and magazines.

. 39 .

"G. REQUEST FOR RELIEF"

5. ALLow The plaintiff To make new orders To News papers and magazines and not To be delayed For 30 days.

6. ALLow The plaintiff acces To news Broadcasting channels.

7 – ALLow The plaintiff To Talk To other inmates with out been penalized

(E)  Award compensation to all expenses associated with This action To The plaintiff.

(F)  Grant all other reliefs as it may appear That The plaintiff is entitled To.

. 40 .

Exhibit

A

1

**NOTIFICATION OF MODIFICATION OF SPECIAL ADMINISTRATIVE MEASURES**
**January 24, 2006**

**SPECIAL ADMINISTRATIVE MEASURES**
Pursuant to 28 C.F.R. § 501.3
Inmate - Ahmed Abdel Sattar

1.    **General Provisions:**

    a.    **Adherence to Usual United States Marshals Service (USMS), BOP and Detention Facility (DF) Policy Requirements -** In addition to the below-listed SAM, the inmate must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc.  If there is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM is more restrictive than usual USMS/BOP/DF policies, then the SAM shall control.  If usual USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF policies shall control.

    b.    **Interim SAM Modification Authority -** During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify the inmate's SAM as long as any SAM modification authorized by OEO:

        i.    Does not create a more restrictive SAM;

        ii.    Is not in conflict with the request of the U.S. Attorney for the Southern District of New York (USA/SDNY),  Federal Bureau of Investigation (FBI), or USMS/BOP/DF, or applicable regulations; and

        iii.    Is not objected to by the USA/SDNY, FBI, or USMS/BOP/DF.

    c.    **Inmate Communications Prohibitions -** The inmate is limited, within USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written or recorded communications) with any other inmate, visitor, attorney, or anyone else except as outlined and allowed by this document that could reasonably foreseeably result in

2

the inmate communicating information (sending or receiving) that could circumvent the SAM's intent of significantly limiting the inmate's ability to communicate (send or receive) information relating to terrorist information.

d.   **Use of Interpreters/Translators by USMS/BOP/DF** - Translator approval requirement:

　　　i.   USMS/BOP/DF may use Department of Justice (DOJ)-approved translators as necessary for the purpose of facilitating communication with the inmate.

　　　ii.  No person shall act as a translator without prior written clearance/approval from USMS/BOP/DF, which shall only be granted after consultation with the FBI and USA/SDNY.

　　　iii. Translators utilized by USMS/BOP/DF shall not be allowed to engage in, or overhear, unmonitored conversations with the inmate. Translators shall not be alone with the inmate, either in a room or on a telephone or other communications medium.

2.   **Attorney/Client Provisions:**

a.   **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document** - The inmate's attorney (or counsel) – individually by each if more than one (1) – must sign an affirmation acknowledging receipt of the SAM restrictions document. by signing the affirmation, the attorney acknowledges his/her awareness and understanding of the SAM provisions and his/her agreement to abide by these provisions, particularly those that relate to contact between the inmate and his attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM. However, in signing the affirmation, the inmate's attorney, and precleared staff, acknowledge the restriction that they will not forward third-party messages to or from the inmate.

---

[1] The term "attorney" refers to the inmate's attorney of record, who has been verified and documented by the USA/SDNY, and who has received and acknowledged receipt of the SAM restrictions document. As used in this document, "attorney" also refers to more than one (1) attorney where the inmate is represented by two (2) or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his/her individual capacity.

3

    i.       The USA/SDNY shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to the inmate's attorney.

    ii.      After initiation of SAM and prior to the inmate's attorney being permitted to have attorney/client-privileged contact with the inmate, the inmate's attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/SDNY.

    iii.    The USA/SDNY shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to OEO in Washington, D.C. and the USMS/BOP/DF.

  b.    **Attorney Use of Interpreters/Translators -**

    i.       Necessity Requirement - No interpreter/translator (translator) shall be utilized unless absolutely necessary where the inmate does not speak a common language with the attorney. Any translator shall be precleared.[2]

    ii.      Attorney Immediate Presence Requirement - Any use of a translator by the attorney shall be in the physical and immediate presence of the attorney - in the same room. The attorney shall not patch through telephone calls, or any other communications, to or from the inmate.

    iii.    Translation of Inmate's Correspondence - An attorney of record may only allow a federally approved translator to translate the inmate's correspondence as necessary for attorney/client privileged communication.

  c.    **Attorney/Client Privileged Visits -** May be contact or non-contact, at the discretion of the USMS/BOP/DF.

---

[2] "Precleared" refers to a translator, who is actively assisting the inmate's attorney with the inmate's defense, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his/her signature – to adhere to the SAM restrictions and requirements.

4

    d.    **Attorney May Disseminate Inmate Conversations** - The inmate's attorney may disseminate the contents of the inmate's communication to third parties for the sole purpose of preparing the inmate's defense – and not for any other reason – on the understanding that any such dissemination shall be made solely by the inmate's attorney, and not by the attorney's staff.

    e.    **Unaccompanied Attorney's Pre-cleared Paralegal(s)[3] May Meet With Client** - The inmate's attorney's pre-cleared paralegal(s) may meet with the inmate without the necessity of the inmate's attorney being present. An investigator or translator may not meet alone with the inmate. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

    f.    **Simultaneous Multiple Legal Visitors** - The inmate may have multiple legal visitors provided that at least one (1) of the multiple legal visitors consists of the inmate's attorney or pre-cleared paralegal. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

    g.    **Legally Privileged Telephone Calls** - The following rules refer to all legally-privileged telephone calls or communications:

        i.    Inmate's Attorney's Pre-cleared Staff May Participate in Inmate Telephone Calls - The inmate's attorney's pre-cleared staff are permitted to communicate directly with the inmate by telephone, provided that the inmate's attorney is physically present and participating in the legal call as well.

        ii.    Inmate's Initiation of Legally-Privileged Telephone Calls - Inmate-initiated telephone communications with his attorney or pre-cleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to the inmate only after the USMS/BOP/DF staff member

---

[3] "Precleared" when used with regard to an attorney's staff, or "pre-cleared staff member," refers to a co-counsel, paralegal, or an investigator who is actively assisting the inmate's attorney with the inmate's defense, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his/her signature – to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one (1) staff member, and the provisions of this document shall be fully applicable to each such staff member in his/her individual capacity. A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

5

confirms that the person on the other end of the line is the inmate's attorney. This privilege is contingent upon the following additional restrictions:

(1)     The inmate's attorney will not allow any nonpre-cleared person to communicate with the inmate, or to take part in and/or listen to or overhear any communications with the inmate.

(2)     The inmate's attorney must instruct his/her staff that:

(a)     The inmate's attorney and pre-cleared staff are the only persons allowed to engage in communications with the inmate.

(b)     The attorney's staff (including the attorney) are not to patch through, forward, transmit, or send the inmate's communications to third parties.

(3)     No telephone call/communication, or portion thereof, except as specifically authorized by this document:

(a)     Is to be overheard by a third party.[4]

(b)     Will be patched through, or in any manner forwarded or transmitted to a third party.

(c)     Shall be divulged in any manner to a third party, except as otherwise provided in Section 2d.

(d)     Shall be in any manner recorded or preserved.[5] The inmate's attorney may make written notes of attorney/ client-privileged communications.

---

[4] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when acting in connection with their official duties. This section does not allow monitoring of attorney/client- privileged communications.

[5] Except by USMS/BOP/DF/FBI/DOJ or other duly authorized federal authorities. This section does not allow monitoring of attorney/client-privileged communications.

6

(4)     If USMS/BOP/DF, FBI or USA/SDNY determines that the inmate
has used or is using the opportunity to make a legal call to speak
with another inmate or for any other non-legal reason that would
circumvent the intent of the SAM, the inmate's ability to contact
his attorney by telephone may be suspended or eliminated.

h.     **Documents Provided by Attorney to Inmate -** The inmate's attorney may
provide his/her client with or review with the inmate, documents related to his
defense, including discovery materials, court papers (including indictments, court
orders, motions, etc.), and/or material prepared by the inmate's attorney, so long
as any of the foregoing documents are translated, if translation is necessary, by a
pre-cleared translator. Any document not related to the inmate's defense must be
sent to the inmate via general correspondence and will be subject to the mail
provisions of subparagraphs 2i and 3g. Documents previously reviewed and
cleared for receipt by the inmate, and already in the inmate's possession at the
outset of the visit, may be discussed or reviewed by the inmate and the inmate's
attorney during the visit.

   i.     None of the materials provided may include inflammatory
materials, materials inciting to violence or military training
materials, or materials that may be used to pass messages from
inmate to inmate, unless such materials have been precleared by
the USA/SDNY and the FBI.

   ii.    The USA/SDNY may authorize additional documents to be
presented to the inmate. If any document not listed or described
above needs to be transmitted to the inmate, consent for the
transmission of the document can be obtained from the
USA/SDNY without the need to formally seek approval for an
amendment to the SAM.

i.     **Legal Mail -** The inmate's attorney may not send, communicate, distribute, or
divulge the inmate's mail, or any portion of its contents (legal or otherwise), to
third parties.[6]

---

[6] Legal mail is defined as properly marked correspondence (marked "Legal Mail")
addressed to or from the inmate's attorney of record. All other mail, including that otherwise
defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail."

7

    i.      In signing the SAM acknowledgment document, the inmate's attorney and pre-cleared staff will acknowledge the restriction that only inmate case-related documents will be presented to the inmate, and that neither the attorney nor his/her staff will forward third-party mail to or from the inmate.

3.    **Inmate's Non-legal Contacts:**

    a.    **Non-legal Telephone Contacts -**

        i.    The inmate is limited to non-legal telephone calls with his immediate family members.[7]

        ii.    The quantity and duration of the inmate's non-legal telephone calls with his immediate family members shall be set by the USMS/BOP/DF, with a minimum of one (1) call per month, unless otherwise agreed upon by USMS/BOP/DF/FBI and USA/SDNY to allow more calls.

    b.    **Rules for Telephone Calls -** For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

        i.    Is to be overheard by a third party.[8]

        ii.    Is to be patched through, or in any manner forwarded or transmitted, to a third party.

        iii.    Shall be divulged in any manner to a third party.

        iv.    Shall be in any manner recorded or preserved.[9]

---

[7] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF/FBI-verifiable) spouse, natural children, parents, and siblings.

[8] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when monitoring in connection with their official duties. This section does not allow monitoring of attorney/client communications.

[9] Except by USMS/BOP/DF/FBI/DOJ or other duly authorized federal authorities.

8

All telephone calls shall be in English unless a fluent FBI, USMS/BOP/DF-approved translator is available to contemporaneously monitor the telephone call. Arranging for a translator may require at least fourteen (14) days advance notice.

c.  **Telephone SAM Restriction Notifications -** For all non-legal telephone calls to the inmate's immediate family member(s):

    i.    USMS/BOP/DF shall inform the inmate of the telephone SAM restrictions prior to each telephone call.

    ii.    USMS/BOP/DF shall verbally inform the inmate's immediate family member(s) on the opposite end of the inmate's telephone communication of the telephone SAM. USMS/BOP/DF is only required to notify the inmate's communication recipient in English.

    iii.    USMS/BOP/DF shall document each such telephone notification.

d.  **Family Call Monitoring -** All calls with the inmate's immediate family member(s) shall be:

    i.    Contemporaneously monitored by the FBI.

    ii.    Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

    iii.    A copy of each inmate/immediate family member telephone call recording shall be provided by USMS/BOP/DF on a single, individual cassette tape (per call) for forwarding to the FBI. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

e.  **Improper Communications -** If telephone call monitoring or analysis reveals that any call or portion of a call involving the inmate contains any indication of a discussion of illegal activity, the soliciting of or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the inmate shall not be permitted any further calls to his immediate family members for a period of time to be determined by USMS/BOP/DF. If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

9

f.    **Non-legal Visits -**

i.      **Limited Visitors -** The inmate shall be permitted to visit only with his immediate family members. The visitor's identity and family member relationship to the inmate will be confirmed by the USMS/BOP/DF and FBI in advance.

ii.     **English Requirement -** All communications during non-legal inmate visits will be in English unless a fluent FBI, USMS/BOP/DF-approved translator is readily available to contemporaneously monitor the communication/visit.

iii.    **Visit Criteria -** All non-legal visits shall be:

(1)    Contemporaneously monitored by USMS/BOP/DF and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

(2)    Permitted only with a minimum of fourteen (14) calendar days advance written notice to the USMS/BOP/DF facility where the inmate is housed.

(3)    Without any physical contact. All such meetings shall be non-contact to protect against harm to visitors or staff should the inmate attempt to take hostages.

(4)    Limited to one (1) adult visitor at a time. However, FBI-verified children of the inmate may visit with a pre-approved adult visitor.

g.    **Non-legal Mail -** Any mail not clearly and properly addressed to/from the inmate's attorney and marked "Legal Mail" (incoming or outgoing). Non-legal mail is limited to only the inmate's immediate family, U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, BOP, other federal law enforcement entities, and, if the inmate is a citizen of a foreign country, a verified consular representative of that country.

i.      **General correspondence with limitations:** correspondence is restricted to only immediate family members. Volume and frequency of outgoing general correspondence with immediate family members only is limited to

10

three (3) pieces of paper (not larger than 8 1/2 x 11), double-sided, once per calendar week to a single recipient. The identity and family member relationship to the inmate will be confirmed by USMS/BOP/DF and FBI.

ii.    **General correspondence without limitations:** correspondence to U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, BOP, and other federal law enforcement entities. There is no volume nor frequency limitation on mail to/from these parties unless there is evidence of abuse of these privileges, threatening correspondence is detected, circumvention of the SAM is detected, or the quantity to be processed becomes unreasonable to the extent that efficient processing to protect the security, good order or discipline of the institution, the public or national security may be jeopardized .

iii.    All non-legal mail will be:

(1)    **Copied -** Shall be copied (including the surface of the envelope) by the warden, or his/her designee, of the facility in which the inmate is housed.

(2)    **Forwarded -** Shall be forwarded, in copy form, to the location designated by the FBI.

(3)    **Analyzed -** After government analysis and approval, if appropriate, the inmate's incoming/outgoing non-legal mail will be forwarded to the USMS/BOP/DF for delivery to the inmate (incoming); or directly to the addressee (outgoing).

The federal government will forward the inmate's non-legal mail to the USMS/BOP/DF for delivery to the inmate or directly to the addressee after a review and analysis period of:

(a)    A reasonable time not to exceed fourteen (14) business days for mail which is written entirely in the English language.

(b)    A reasonable time not to exceed sixty (60) business days for any mail which includes writing in any language other than English, to allow for translation.

11

(c)    A reasonable time not to exceed sixty (60) business days for any mail where the Federal Government has reasonable suspicion to believe that a code was used, to allow for decoding.

iv.    **Mail Seizure** - If outgoing/incoming mail is determined by USMS/BOP/DF or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to the FBI for appropriate action. The inmate shall be notified in writing of the seizure of any mail.

4.    **Communication With News Media:**

The inmate will not be permitted to talk with, meet with, correspond with, or otherwise communicate with any member, or representative, of the news media, in person, by telephone, by furnishing a recorded message, through the mail, through his attorney, through a third party, or otherwise.

5.    **No Group Prayer:**

a.    The inmate shall not be allowed to engage in group prayer with other inmates.

b.    If an FBI and/or USMS/BOP/DF-approved religious representative is to be present for prayer with the inmate, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the USMS/BOP/DF.

6.    **No Communal Cells and No Communication Between Cells:**

a.    The inmate shall not be allowed to share a cell with another inmate.

b.    The inmate shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate by making statements audible to other inmates or by sending notes to other inmates.

7.    **Recording Conversations Between Cells:**

a.    USMS/BOP/DF/FBI are hereby authorized to place microphones in the hallways and elsewhere outside the inmate's cell to record any statements made by the inmate to other inmates or staff.

12

   b.     The Notice of SAM given to the inmate shall notify the inmate that he is subject
          to such recording.

8.    **Cellblock Procedures:**

   a.     The inmate shall be kept separated from other inmates as much as possible while
          in the cellblock area.

   b.     The inmate shall be limited, within USMS/BOP/DF's reasonable efforts and
          existing confinement conditions, from communicating with any other inmate
          while in the cellblock area.

9.    **Commissary Privileges:**

   The USMS/BOP/DF shall restrict access to commissary items or any other objects
   determined by USMS/BOP/DF to be capable of being converted into dangerous
   instruments.

10.   **Access to Mass Communications:**

   To prevent the inmate from receiving and acting upon critically-timed information or
   information coded in a potentially undetectable manner, the inmate's access to materials
   of mass communication is restricted as follows:

   a.     **Periodicals/Newspapers -**

      i.     The inmate may have access to publications determined not to facilitate
             criminal activity or be detrimental to national security; the security, good
             order or discipline of the institution; or the protection of the public. This
             determination is to be made by the FBI, in consultation with the
             USMS/BOP/DF and USA/SDNY.

      ii.    Sections of the periodical/newspaper which offer a forum for information
             to be passed by unknown and/or unverified individuals, including but not
             limited to classified advertisements and letters to the editor, should be
             removed from the periodicals/newspapers prior to distribution to the
             inmate.

13

  iii. The inmate shall then have access to the remaining portions of the periodicals/newspapers in accordance with USMS/BOP/DF policy, after a delay of at least thirty (30) days.  In accordance with subparagraph 3g above, the FBI will review the remaining portions of the publications prior to distribution to the inmate and be responsible for any translations required.

  iv. In order to avoid passing messages/information from inmate to inmate, the inmate shall not be allowed to share the publication(s) with any other inmates.

 b. **Television and Radio** - The inmate is restricted from access to channels/stations which primarily broadcast news, but is permitted access to all other radio and television channels/stations, in accordance with USMS/BOP/DF policies.

 c. **Termination or Limitation -** If the USMS/BOP/DF determines that the mass communications are being used to send messages to the inmate relating to the furtherance of terrorist activities, the inmate's access may be limited or terminated for a period of time to be determined by the USMS/BOP/DF.

11. **Frequent Cell Searches:**

USMS/BOP/DF is hereby directed to search the inmate's cell frequently and to take appropriate disciplinary action for any infractions.

12. **Transfer of Custody:**

In the event that the inmate is transferred to or from the custody of the USMS, BOP or any other DF, the SAM provisions authorized for this inmate will continue in effect, without need for any additional DOJ authorization.



**U.S. Department of Justice**
Federal Bureau of Prisons

*United States Penitentiary*
*Administrative Maximum*

---

*Office of the Warden*                          *Florence, CO 81226*

January 23, 2007

MEMORANDUM FOR  AHMED SATTAR, REGISTER NUMBER 53506-054

FROM:                    R. Wiley, Warden

SUBJECT:              **Notification of Special Administrative Measures**

Pursuant to 28 C.F.R. § 501.3, special administrative conditions were implemented regarding your confinement. The Bureau of Prisons (BOP) adopted these special administrative conditions based on information of your proclivity for violence. These special administrative measures (SAM) are extended for an additional one year period. This SAM will commence immediately upon expiration of the prior SAM authorization period and will be in effect for a period of one (1) year, subject to any further direction.

1. **General Provisions:**

   a. **Adherence to Usual United States Marshals Service (USMS), BOP, and Detention Facility (DF) Policy Requirements** - In addition to the below-listed SAM, you must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc. If there is a conflict between the USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM is more restrictive than usual USMS/BOP/DF policies, then the SAM shall control. If usual USMS/BOP/DF policies are more restrictive than the SAM, then the USMS/BOP/DF policies shall control.

   b. **Interim SAM Modification Authority** - During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify your SAM as long as any SAM modification authorized by OEO:

---

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 2

    i.   Does not create a more restrictive SAM.

    ii.   Is not in conflict with the request of the U. S. Attorney for the Southern District of New York (USA/SDNY), Federal Bureau of Investigation (FBI), or USMS/BOP/DF, or applicable regulations; and

    iii.   Is not objected to by the USA/SDNY, FBI, or USMS/BOP/DF.

c.   **Inmate Communications Prohibitions** - You are limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written, or recorded communications) with any other inmate, visitor, attorney, or anyone else except as outlined and allowed by this document that could reasonably foreseeably result in your communicating information (sending or receiving) that could circumvent the SAM's intent of significantly limiting your ability to communicate (send or receive) terrorist information.

d.   **Use of Interpreters/Translators by USMS/BOP/DF** - Translator approval requirement:

    i.   The USMS/BOP/DF may use the Department of Justice (DOJ) approved translators as necessary for the purpose of facilitating communication with you.

    ii.   No person shall act as a translator without prior written clearance/approval from the USMS/BOP/DF, which shall only be granted after consultation with the FBI and USA/SDNY.

    iii.   Translators utilized by the USMS/BOP/DF shall not be allowed to engage in, or overhear, unmonitored conversations with you. Translators shall not be alone with you, either in a room or on a telephone or other communications medium.

2.   **<u>Attorney/Client Provisions:</u>**

a.   **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document** - Your

---

[1] The term "attorney" refers to the inmate's attorney of record, who has been verified and documented by the USA/SDNY, and who has received and acknowledged

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 3

attorney (or counsel) - individually by each if more than one (1) - much sign an affirmation acknowledging receipt of the SAM restrictions document. By signing the affirmation, the attorney acknowledges his/her awareness and understanding of the SAM provisions and his/her agreement to abide by these provisions, particularly those that relate to contact between you and your attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM. However, in signing the affirmation, your attorney, and precleared staff, acknowledge the restriction that they will not forward third-party messages to or from you.

i.   The USA/SDNY shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to your attorney.

ii.  After initiation of the SAM and prior to your attorney being permitted to have attorney/client-privileged contact with you, your attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/SDNY.

iii. The USA/SDNY shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to the OEO in Washington, D. C. and to the USMS/BOP/DF.

b.  **Attorney Use of Interpreters/Translators -**

i.   Necessity Requirement - No interpreter/translator (translator) shall be utilized unless absolutely necessary where you do not speak a common language with the attorney. Any translator shall be precleared.[2]

---

receipt of the SAM restrictions document. As used in this document, "attorney" also refers to more than one (1) attorney where the inmate is represented by two (2) or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his/her individual capacity.

   [2] "Precleared" refers to a translator, who is actively assisting the inmate's attorney with the inmate's defense, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed - as evidenced by his/her signature - to adhere to the SAM restrictions and requirements.

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 4

    ii.   Attorney Immediate Presence Requirement - Any use of a translator by the attorney shall be in the physical and immediate presence of the attorney - in the same room. The attorney shall not patch through telephone calls, or any other communications, to or from you.

    iii.   Translation of Inmate's Correspondence - An attorney of record may only allow a federally approved translator to translate your correspondence as necessary for attorney/client-privileged communication.

c.   **Attorney/Client-Privileged Visits** - May be contact or noncontact, at the discretion of the USMS/BOP/DF.

d.   **Attorney May Disseminate Inmate Conversations** - Your attorney may disseminate the contents of your communication to third parties for the sole purpose of preparing your defense - and not for any other reason - on the understanding that any such dissemination shall be made solely by your attorney, and not by the attorney's staff.

e.   **Unaccompanied Attorney's Precleared Paralegal(s)[3] May Meet With Client** - Your attorney's precleared paralegal(s) may meet with you without the necessity of your attorney being present. An investigator or translator may not meet alone with you. These meetings may be contact or noncontact, at the discretion of the USMS/BOP/DF.

f.   **Simultaneous Multiple Legal Visitors** - You may have multiple legal visitors provided that at least one (1) of the multiple legal visitors consists of your attorney or precleared paralegal. These meetings may be contact or noncontact, at the discretion of the USMS/BOP/DF.

---

[3] "Precleared" when used with regard to an attorney's staff, or "precleared staff member", refers to a co-counsel, paralegal, or an investigator, who is actively assisting the inmate's attorney with the inmate's post-sentencing proceedings, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed - as evidenced by his/her signature - to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one (1) staff member, and the provisions of this document shall be fully applicable to each such staff member in his/her individual capacity. A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

*"Sensitive But Unclassified"*

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 5

g. **Legally Privileged Telephone Calls** - The following rules refer to all legally-privileged telephone calls or communications:

   i. **Inmate's Attorney's Precleared Staff May Participate in Inmate Telephone Calls** - Your attorney's precleared staff are permitted to communicate directly with you by telephone, provided that your attorney is physically present and participating in the legal call as well.

   ii. **Inmate's Initiation of Legally-Privileged Telephone Calls** - Your initiated telephone communications with your attorney or precleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to you only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is your attorney. This privilege is contingent upon the following additional restrictions:

     (1) Your attorney will not allow any nonprecleared person to communicate with you, or to take part in and/or listen to or overhear any communications with you.

     (2) Your attorney must instruct his/her staff that:

       (a) Your attorney and precleared staff are the only persons allowed to engage in communications with you.

       (b) The attorney's staff (including the attorney) are not to patch through, forward, transmit, or send your communications through third parties.

     (3) No telephone call/communications, or portion thereof, except as specifically authorized by this document:

       (a) Is to be overheard by a third party.[4]

---

[4] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when monitoring in connection with their official duties. This section does not allow monitoring of attorney/client-privileged communications.

*"Sensitive But Unclassified"*

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 6

(b) Will be patched through, or in any manner forwarded or transmitted to a third party.

(c) Shall be divulged in any manner to a third party, except as otherwise provided in Section 2d.

(d) Shall be in any manner recorded or preserved.[5] Your attorney may make written notes of attorney/client-privileged communications.

(4) If the USMS/BOP/DF/FBI or USA/SDNY determines that you have used or are using the opportunity to make a legal call to speak with another inmate or for any other nonlegal reason that would circumvent the intent of the SAM, your ability to contact your attorney by telephone may be suspended or eliminated.

h.  **Documents Provided by Attorney to Inmate** - Your attorney may provide you with, or review with you, documents related to your defense, including discovery materials, court papers (including indictments, court orders, motions, etc.), and/or material prepared by your attorney, so long as any of the foregoing documents are translated, if translation is necessary, by a precleared translator. Any documents not related to your defense must be sent to you via general correspondence and will be subject to the mail provisions of subparagraphs 2i and 3g. Documents previously reviewed and cleared for receipt by you, and already in your possession at the outset of the visit, may be discussed or reviewed by you and your attorney during the visit.

i.  None of the materials provided may include inflammatory materials, materials inciting violence or military training materials, materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USA/SDNY and the FBI.

ii.  The USA/SDNY may authorize additional documents to be presented to you. If any document not listed or described above needs to be transmitted to you, consent for the transmission of the document can be

---

[5] Except by the USMS/BOP/DF/FBI/DOJ or other duly authorized federal authorities. This section does not allow monitoring of attorney/client-privileged communications.

*"Sensitive But Unclassified"*

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 7

    obtained from the USA/SDNY without the need to formally seek approval for an amendment to the SAM.

    i.  **Legal Mail** - Your attorney(s) may not send, communicate, distribute, or divulge your mail, or any portion of its content (legal or otherwise), to third parties.[6]  In signing the SAM acknowledgment document, your attorney and precleared staff will acknowledge the restriction that only your case related documents will be presented to you, and that neither the attorney nor his staff will forward third-party mail to or from you.

3.  **Inmate's Nonlegal Contacts:**

    a.  **Nonlegal Telephone Contacts -**

        i.  You are limited to nonlegal telephone calls only to your immediate family members.[7]

        ii.  The quantity and duration of your nonlegal telephone calls with your immediate family members shall be set by the USMS/BOP/DF, with a minimum of one (1) call per month, unless otherwise agreed upon by the USMS/BOP/DF/FBI and USA/SDNY to allow more calls.

    b.  **Rules for Telephone Calls** - For all nonlegally privileged telephone calls or communications, no telephone call/communications, or portion thereof:

        i.  Is to be overheard by a third party.[8]

        ii.  Is to be patched through, or in any manner forwarded or transmitted, to a third party.

---

[6] Legal mail is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney of record.  All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "nonlegal mail".

[7] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF, FBI-verifiable) spouse, natural children, parents, and siblings.

[8] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when monitoring in connection with their official duties.  This section does not allow monitoring of attorney/client communications.

---

*"Sensitive But Unclassified"*

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 8

    iii.  Shall be divulged in any manner to a third party.

    iv.  Shall be in any manner recorded or preserved.[9]

All telephone calls shall be in English unless a fluent FBI/USMS/BOP/DF approved translator is available to contemporaneously monitor the telephone call. Arranging for a translator may require at least fourteen (14) days advance notice.

c.  **Telephone SAM Restriction Notifications** - For all nonlegal telephone calls to your immediate family member(s):

    i.  The USMS/BOP/DF shall inform you of the telephone SAM restrictions prior to each telephone call.

    ii.  The USMS/BOP/DF shall verbally inform your immediate family member(s) on the opposite end of your telephone communication of the telephone SAM. The USMS/BOP/DF is only required to notify your communication recipient in English.

    iii.  The USMS/BOP/DF shall document each such telephone notification.

d.  **Family Call Monitoring** - All calls with your immediate family member(s) shall be:

    i.  Contemporaneously monitored by the FBI.

    ii.  Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

    iii.  A copy of each inmate/immediate family member telephone call recording shall be provided by the USMS/BOP/DF on a single, individual cassette tape (per call) for forwarding to the FBI. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

e.  **Improper Communications** - If telephone call monitoring or analysis reveals that any call or portion of a call involving you contains any indication of a

---

[9] Except by USMS/BOP/DF/FBI/DOJ or other duly authorized federal authorities.

*"Sensitive But Unclassified"*

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 9

discussion of illegal activity, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, you shall not be permitted any further calls to your immediate family members for a period of time to be determined by the USMS/BOP/DF.  If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

f.   **Nonlegal Visits** -

i.   **Limited Visitors** - You shall be permitted to visit only with your immediate family members.  The visitor's identity and family member relationship to you will be confirmed by the USMS/BOP/DF and FBI in advance.

ii.   **English Requirement** - All communications during nonlegal inmate visits will be in English unless a fluent FBI, USMS/BOP/DF-approved translator is readily available to contemporaneously monitor the communication/visit.

iii.   **Visit Criteria** - All nonlegal visits shall be:

(1)   Contemporaneously monitored by the USMS/BOP/DF and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

(2)   Permitted only with a minimum of fourteen (14) calendar days advance written notice to the USMS/BOP/DF facility where you are housed.

(3)   Without any physical contact.  All such meetings shall be noncontact to protect against harm to visitors or staff should you attempt to take hostages.

(4)   Limited to one (1) adult visitor at a time.  However, your FBI-verified children may visit with a preapproved adult visitor.

g.   **Nonlegal Mail** - Any mail not clearly and properly addressed to/from your attorney and marked "Legal Mail" (incoming and outgoing).  Nonlegal mail is limited to only your immediate family, U. S. courts, federal judges, U. S. Attorneys' Office, members of U. S. Congress, BOP, other federal law enforcement entities, and if you are a citizen of a foreign country, a verified consular representative of that country.

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 10

  i.    **General correspondence with limitations**: Correspondence is restricted
        to only immediate family members.  Volume and frequency of outgoing
        general correspondence with immediate family members only may be
        limited to three (3) pieces of paper (not larger than 8 1/2 x 11), double-
        sided, once per calendar week to a single recipient, at the discretion of the
        USMS/BOP/DF.  The identity and family member relationship to you will be
        confirmed by the USMS/BOP/DF and FBI.

  ii.   **General correspondence without limitations**: Correspondence to U. S.
        courts, federal judges, U. S. Attorneys' Offices, members of U. S.
        Congress, BOP, and other federal law enforcement entities.  There is no
        volume nor frequency limitation on mail to/from these parties unless there
        is evidence of abuse of these privileges, threatening correspondence is
        detected, circumvention of the SAM is detected, or the quantity to be
        processed becomes unreasonable to the extent that efficient processing to
        protect the security, good order or discipline of the institution, the public, or
        national security may be jeopardized.

  iii.  All nonlegal mail will be:

        (1)  **Copied** - Shall be copied (including the surface of the envelope) by
             the Warden, or his/her designee, of the facility in which you are
             housed.

        (2)  **Forwarded** - Shall be forwarded, in copy form, to the location
             designated by the FBI.

        (3)  **Analyzed** - After government analysis and approval, if appropriate,
             your incoming/outgoing nonlegal mail will be forwarded: 1) to the
             USMS/BOP/DF for delivery to you (incoming); or 2) directly to the
             addressee (outgoing).

        (4)  The Federal Government will forward your nonlegal mail to the USMS/
             BOP/DF for delivery to you or directly to the addressee after a review
             and analysis period of:

             (a)  A reasonable time, not to exceed fourteen (14) business days, for
                  mail which is written entirely in the English language.

             (b)  A reasonable time, not to exceed sixty (60) business days, for any
                  mail which includes writing in any language other than English, to
                  allow for translation.

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 11

      (c) A reasonable time, not to exceed sixty (60) business days, for any mail where the Federal Government has reasonable suspicion to believe that a code was used, to allow for decoding.

    iv. **Mail Seizure** - If outgoing/incoming mail is determined by the USMS/BOP/DF or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to the FBI for appropriate action. You shall be notified in writing of the seizure of any mail.

4. <u>**Communication with News Media:**</u> You will not be permitted to talk with, meet with, correspond with, or otherwise communicate with any member or representative of the news media, in person, by telephone, by furnishing a recorded message, through the mail, through your attorney, through a third party, or otherwise.

5. <u>**No Group Prayer:**</u>

    a. You shall not be allowed to engage in group prayer with other inmates.

    b. If an FBI and/or USMS/BOP/DF approved religious representative is to be present for prayer with you, the prayer shall be conducted as part of a contact or noncontact visit, at the discretion of the USMS/BOP/DF.

6. <u>**No Communal Cells and No Communication Between Cells:**</u>

    a. You shall not be allowed to share a cell with another inmate.

    b. You shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate by making statements audible to other inmates or by sending notes to other inmates.

7. <u>**Recording Conversations Between Cells:**</u>

    a. The USMS/BOP/DF/FBI are hereby authorized to place microphones in the hallways and elsewhere outside your cell to record any statements made by you to other inmates or staff.

    b. The Notice of SAM given to you shall notify you that you are subject to such recording.

---

*"Sensitive But Unclassified"*

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 12

8. **Cellblock Procedures:**

    a. You shall be kept separated from other inmates as much as possible while in the cellblock area.

    b. You shall be limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

9. **Commissary Privileges:** The USMS/BOP/DF shall restrict access to commissary items or any other objects determined by the USMS/BOP/DF to be capable of being converted into dangerous instruments.

10. **Access to Mass Communications:** To prevent you from receiving and acting upon critically-timed information or information coded in a potentially undetectable manner, your access to materials of mass communication is restricted as follows:

    a. **Periodicals/Newspapers –**

        i. You may have access to publications determined not to facilitate criminal activity or be detrimental to national security; the security, good order, or discipline of the institution; or the protection of the public. This determination is to be made by the FBI, in consultation with the USMS/BOP/DF and USA/SDNY.

        ii. Sections of the periodical/newspaper which offer a forum for information to be passed by unknown and/or unverified individuals, including but not limited to classified advertisements and letters to the editor, should be removed from the periodicals/newspapers prior to distribution to you.

        iii. You shall then have access to the remaining portions of the periodicals/newspapers in accordance with the USMS/BOP/DF policy, after a delay of at least thirty (30) days. In accordance with subparagraph 3g above, the FBI will review the remaining portions of the publications prior to distribution to you and be responsible for any translations required.

        iv. In order to avoid passing messages/information from inmate to inmate, you shall not be allowed to share the publication(s) with any other inmates.

---

*"Sensitive But Unclassified"*

Notification of Special Administrative Measures
Inmate Ahmed Sattar, #53506-054
January 23, 2007
Page 13

b. **Television and Radio** - You are restricted from access to channels/stations which primarily broadcast news, but are permitted access to all other radio and television channels/stations, in accordance with the USMS/BOP/DF policies.

c. **Termination or Limitation** - If the FBI/USMS/BOP/DF determines that the mass communications are being used to send messages to you relating to the furtherance of terrorist activities, your access may be limited or terminated for a period of time to be determined by the FBI/USMS/BOP/DF.

11. <u>**Frequent Cell Searches:**</u> The USMS/BOP/DF is hereby directed to search your cell frequently and to take appropriate disciplinary action for any infractions.

12. <u>**Transfer of Custody:**</u> In the event you are transferred to or from the custody of the USMS, BOP, or any other DF, the SAM provisions authorized for you will continue in effect, without need for any additional DOJ authorization.

These conditions are imposed by the USMS/BOP/DF at the request of the Attorney General, through his designated agent, the Assistant Attorney General.

Received:     January 25, 2007
              (13 pages)

*I'm Refused to Sign*
*the SO/Counselor*

Ahmed Sattar
Register Number 53506-054

---

*"Sensitive But Unclassified"*

FLM 1330.13f
Attachment 1

## USP ADMINISTRATIVE MAXIMUM
## FLORENCE, COLORADO
## INFORMAL RESOLUTION FORM

Inmate Name: _SATTAR_   Reg. No. _53506-054_

Unit: _H_   Date: _1-31-07_

**NOTICE TO INMATE**: You are advised that normally prior to filing a Request for Administrative Remedy, (BP-DIR-13), you **must** attempt to informally resolve your complaint through your Correctional Counselor. Please follow the three steps listed below:

1.   State your complaint: _The special Administrative measures (SAM) has been extended in my case with out any due process or justifications The SAM has ~~more~~ numerous restrictions that violates my rights protected by 1st, 4th, 5th, 6th, and 8th Amendments in the constituton_

(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))

2.   State what actions you have made to informally resolve your complaint: _I request the Removal of the Intire SAM documents and all restrictio in it._

3.   State what resolution you expect: _I expect the removal of the SAM and to be Treated as regular inmats_

Inmate's Signature: _Ahmed Abdel Sattar_   Date: _1-31-07_

Correctional Counselor's Comments (Steps to Resolve): _PER SIS, your "SAM" was extended because you still pose A threat to National security As well As other BOP facclittes. Accordingly, your Request is denied_

Counselor's Signature: _[signature]_   Date: _2-5-7_
Unit Manager's Review: _[signature]_   Date: _2/5/07_
Informally Resolved: _____   Date: _____

|  | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | EXECUTIVE STAFF |
|---|---|---|---|---|---|
| DATE | 1-30-07 | 1-31-07 | 2-6-7 | 2-8-7 |  |
| TIME | 1:50 pm | 11:50 AM | 2:35 Pm | 1:00 PM |  |
| COUNSELOR | JEA | JEA | JEA | JEA |  |

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

---

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: SATTAR Ahmed A.        53506-054    H.      ADX Florence Co.
　　　LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A– INMATE REQUEST**

The special Administrative measures (SAM) was extended for another year. Since the imposition of the SAM. I received no hearing at all nor I was given a chance to present evidence in my defense. The SAM is one document consisting of numerous restrictions such as but not limited to, correspondence with immediate Family members only (no Friends or relatives), No news at all, removel of news paper sections and delay of 30 days, exessive delay of mail delivery, visiting restrictions that I'm not allowed to see any of my adult children Together or with my wife and much more. The (SAM) restrictions document violates my rights protected by the 1st, 11th, 15th, 16th, 8th of the constitution and violates my equal protection. I request the removal of the entire SAM document and all restrictions in it

2/8/07          Ahmed Abdul Sattar
DATE              SIGNATURE OF REQUESTER

**Part B– RESPONSE**

FEB 15 2007

SEE ATTACHED RESPONSE

_____        _____
DATE                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

SECOND COPY: RETURN TO INMATE          CASE NUMBER: 442936-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
　　　　　LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        _____
DATE                    RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN          PRINTED ON RECYCLED PAPER          BP–229(13)
                                                    APRIL 1982

**BP-229 RESPONSE**                          **Case Number: 442936-F1**

**Name: SATTAR, Ahmed**                      **Register Number: 53506-054**

Your Request for Administrative Remedy dated February 8, 2007, and received in this office on February 15, 2007, has been reviewed. In your request, you state your Special Administrative Measures were extended for another year and request the removal of all SAMs imposed.

A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review revealed the United States Attorney General determined there is a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. As a result, pursuant to 28 C.F.R. § 501.3, a Special Administrative Measure (SAM) has been implemented in order to restrict your access to the mail, the media, the telephone, and visitors. Because you still pose a threat to national security, your SAM was recently extended for one year.

Accordingly, your Request for Administrative Remedy is denied. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

R. Wiley, Warden                             MAR 0 1 2007

                                             Date

**U.S. Department of Justice**

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: SATTAR    AHMED    A.    53506—054    H    Florence ADX

      LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

**Part A - REASON FOR APPEAL**

1— The ADX Warden Faild To address my B.P.9, and daviated From The subject That I raised in it, which is he "SAMS" violations of my constitutional rights, and becuse of those violations I request From The regional Director To remove of me The "SAM" document and all it's restrictions.

2— The worden did not offer any evidence That any of my communications or contacts while I was ncercerated ever were a threat or could harm national security, it should also be known That I have been ncercerated since 4/9/02 and until 2/1/06 No one ever claimed That I posed Threat To national security

The "SAM" document and it's restrictions are violations of my rights That are protected by The 1st, 4th, 5th, 6th, and 8th amendments of the constitution and also violates my equal right protaction, for all The reasons above. I request The removal of intire "SAM" and all The restrictions in it.

3/6/07                      Ahmed Abdel Sattar

      DATE                            SIGNATURE OF REQUESTER

**Part B - RESPONSE**

MAR 1 2 2007

APR 1 0 2007                                   SEE ATTACHED RESPONSE

_____                   _____

         DATE                               REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                  CASE NUMBER: 442936-R1

**Part C - RECEIPT**

                                     CASE NUMBER: _____

Return to: _____

         LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.         UNIT         INSTITUTION

SUBJECT: _____

_____                   _____

         DATE                         SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN                       PRINTED ON RECYCLED PAPER                            BP-230(13)
                                                                           JUNE 2002

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

---

Admin Remedy Number:   442936-R1

---

This is in response to your Regional Administrative Remedy Appeal dated March 6, 2007, in which you allege the Special Administrative Measures (SAMs) imposed in your case violate your rights. You request the SAMs be removed.

We have reviewed your appeal and the Warden's response dated March 1, 2007.  As indicated, the United States Attorney General may impose SAMs if there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. These SAMs ordinarily may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism.  While the Bureau of Prisons neither imposes nor rescinds SAMs, it implements the restrictions contained within.  You have provided no new information to support your request for removal of the SAMs.  As the U.S. Attorney General has determined your particular SAMs are necessary, they will not be removed or modified at this time and will remain in effect until such time the Attorney General determines they are no longer warranted.

Based on the above information, your Request for Administrative Remedy is denied.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.  Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

_4. 09. 07_
Date

Michael K. Nalley, Regional Director

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: SATTAR Ahmed A.          53506-054          H          Florence ADX Max
_____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL.**

The Regional Director alleges That I have provided no new information To support my request For the removal of the SAM. I have stated a Fact that I was without the SAM during 4/9/02 till 2/1/06 and did not commit any violations regarding my communications or any of The B.O.P. rules To Justify The impositions of The SAM. The impositions of The SAM and it's renewal in Feb. 2007 was unconstitutional no hearing was given, it still Violates my constitutional rights protected by the 1st, 4th, 5th, 6th, 8th, Amendments of the constitution and the Equal protection. I request the removal of the entire SAM document and all restrictions with in it

4-23-07          Ahmed Abdul Sattar
_____          _____
DATE          SIGNATURE OF REQUESTER

**Part B - RESPONSE**

# RECEIVED

APR 3 0 2007

Administrative Remedy Section
Federal Bureau of Prisons

_____          GENERAL COUNSEL
DATE

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 442936-A1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____
DATE          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN          PRINTED ON RECYCLED PAPER          BP-231(13)
JUNE 2002

**Administrative Remedy No. 442936-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal in which you contend the Special Administrative Measures
(SAMs) have been extended for another year without the provision
of a due process hearing.  You object to the restrictions,
alleging they violate your constitutional rights.  You request
the SAMs be rescinded in its entirety.

As you have been made aware, the authority for the SAMs action is
derived from 28 CFR § 501.3.  As per this regulation, the
Attorney General may impose SAMs if there is substantial risk
that a prisoner's communications or contacts with persons could
result in death or serious bodily injury to persons, or
substantial damage to property that would entail the risk of
death or serious bodily injury to persons.  A hearing prior to
imposition is not required.  They are restrictions to ensure your
communications do not place the safety or security of the public,
other inmates, or staff at risk.

You may object to the provisions of the SAMs, but as you were
advised, the Bureau merely informs you of the requirements of the
SAMs, and ensures the measures are followed.  The continued need
of the restriction is reviewed annually by the Attorney General
(AG), and will remain in place until the AG determines they are
no longer necessary.

We therefore concur with the responses provided.  Accordingly,
your appeal is denied.

_____
June 28, 2007
Date

_____
Harrell Watts, Administrator
National Inmate Appeals