IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02698-WDM-KLM

AHMED ABDEL SATTAR,

    Plaintiff,

v.

ALBERTO GONZALES,
HARLEY LAPPIN,
HARREL WATTS,
RONALD WILEY, and
UNKNOWN FBI AGENTS 1-5,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Defendants' Motion to Dismiss** [Docket No. 25; Filed May 19, 2008] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo.LCivR. 72.1.C., the matter has been referred to this Court for recommendation. The Court has reviewed the Motion, Plaintiff's Response [Docket No. 53; Filed August 20, 2008], Defendants' Reply [Docket No. 55; Filed September 4, 2008], the entire case file, and the applicable law and is sufficiently advised in the premises. Accordingly, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART**, as set forth below.

**I.    Statement of the Case**

    At the time of filing, Plaintiff Ahmed Abdel Sattar was incarcerated at the

1

Administrative Maximum Prison ("ADX") in Florence, Colorado. Plaintiff filed a *pro se* amended prisoner complaint pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) on February 29, 2008 [Docket No. 8]. Plaintiff alleges that, beginning in February 2006, the Attorney General found "a substantial risk that the [Plaintiff's] communications or contacts with other persons could result in death or serious bodily injury to persons," and directed that Plaintiff be placed under certain "Special Administrative Measures" ("SAMs"). *See* 28 C.F.R. § 501.3(c). Plaintiff alleges that his mail, both incoming and outgoing, is delayed while FBI agents review it, that he is prohibited from communicating with family members in Egypt and with any non-immediate family members, that he is denied access to various newspapers and magazines, that his contacts with lawyers are restricted, that he is not allowed to participated in Muslim group prayer, that he is denied access to television and radio stations, and that he is not permitted to talk to other inmates. *Amended Complaint* [#8] at 4-10. Plaintiff alleges that the SAMs were extended for one-years periods in February 2007 and February 2008. *Id.* at 6. Plaintiff asserts claims for violations of his rights to free speech pursuant to the First Amendment, to due process pursuant to the Fifth Amendment, to be free from unreasonable searches pursuant to the Fourth Amendment, to solicit legal assistance pursuant to the Sixth Amendment, and to be free from cruel and unusual punishment pursuant to the Eighth Amendment. Plaintiff seeks injunctive relief requesting that the SAMs be removed. *Amended Complaint* [#8] at 18.

     Defendants have filed a Motion to Dismiss all claims against them in their official capacities except Plaintiff's First Amendment claim. *Motion* [#25]. Defendants assert that Plaintiff fails to state a claim for relief that is plausible on its face and request dismissal

pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Discussion

### A. Legal Standards Applicable to Plaintiff's Claims

#### 1. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

When deciding a Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the Plaintiff. *Erickson v. Pardus*, ____ U.S. ____, 127 S. Ct. 2197 (2007). Courts should look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). The complaint must sufficiently allege facts supporting all of the elements necessary to establish an entitlement to relief under the legal theory proposed. *Lane v. Simon*, 495 F.3d 1182 (10th Cir. 2007). As the Tenth Circuit has explained, "the mere metaphysical possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174 (10th Cir. 2007). Additionally, a court evaluating a complaint tested by a motion to dismiss may only consider the complaint and any documents attached to it as exhibits. *Hall*, 935 F.2d at 1112; *see also Erickson*, 127 S. Ct. at 2200 (evaluating sufficiency of complaint by reference only to the allegations of the complaint). Here, Defendants assert that Plaintiff

fails to state a claim for Fourth, Fifth, Sixth and Eighth Amendment relief.

Finally, because Plaintiff here is proceeding *pro se*, the Court construes his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). Even so, Plaintiff still retains "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This burden remains because a "*pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

**B.  Analysis**

**1.  Claim Two - Fifth Amendment Due Process Violations**

In his Second Claim for Relief, Plaintiff alleges that the SAMs deprive him "of significant liberty interest without affording the Plaintiff any procedural protections," in violation of his Fifth Amendment right to procedural due process. *Amended Complaint* [#8] at 13.

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (quotations omitted). A plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Public Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected liberty interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184–85 (10th Cir. 2001). Second, he must show that the procedures used in addressing his liberty interest were inadequate under the circumstances. *See Bartell*, 263 F.3d at 1149. The Supreme Court has held that, for prisoners, a liberty right exists only where an interference with that right would

impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). Finally, while it is true that "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974).

Plaintiff must first show that he possesses a constitutionally protected liberty interest to be free from the imposition of the SAMs. *Bartell*, 263 F.3d at 1149. For the purposes of the Motion to Dismiss, Defendants do not dispute that Plaintiff may plausibly demonstrate that he possesses a constitutionally protected liberty interest. *Motion* [#25] at 8. Therefore, Plaintiff must only show that the procedures utilized in imposing the SAMs were inadequate under the circumstances. *See Bartell*, 263 F.3d at 1149. In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court examined the process to be afforded inmates before and after their indefinite placement in an Ohio maximum security prison ("OSP"), applying the procedural due process framework set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).[1] The *Wilkinson* inmates were provided with both notice of the factual basis leading to consideration for OSP placement and a fair opportunity for rebuttal. 545 U.S. at 226. The *Wilkinson* court found that "[o]ur procedural due process cases have consistently observed that [notice and an opportunity to respond] are among the most

---

[1] *Mathews* requires the consideration of three factors: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation and the value of additional safeguards; and (3) the Government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335.

5

important procedural mechanisms for purposes of avoiding erroneous deprivations." *Id.* (citations omitted). In addition, the *Wilkinson* court found it significant that the inmates were provided with periodic review upon their placement in OSP. *Id.* at 227. The *Wilkinson* court also noted that "[w]here the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety of other inmates and personnel, . . . informal, non adversary procedures" that allow notice and the opportunity to be heard sufficiently satisfy due process requirements. *Id.* at 228-29 (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1 (1979); *Hewitt v. Helms*, 459 U.S. 460 (1983)). The Tenth Circuit recently found that a relaxed set of procedures satisfied an inmate's challenge to his conditions of confinement, and due process, as long the inmate is allowed: "(1) a sufficient initial level of process, i.e., a reasoned examination of the assignment; (2) the opportunity for the inmate to receive notice and respond to the decision; and (3) safety and security concerns to be weighed as part of the placement decision." *Estate of DiMarco v. Wy. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007) (citing *Wilkinson*, 545 U.S. at 226-27).

Therefore, the Court must first consider whether Plaintiff received "a sufficient initial level of process, i.e., a reasoned examination of the assignment . . . ." *Id.* In his Complaint, Plaintiff states that on February 2, 2006, he was informed that the SAMs were to be implemented, effective immediately. *Amended Complaint* [#8] at 6. He states that he "has never received notice of the factual basis for the imposition of the SAMS . . . ." *Id.* Indeed, Plaintiff alleges that the only information he received related to the reason for imposition of the SAMs was that they were based upon "information of [Plaintiff's] proclivity for violence." *Amended Complaint* [#8] at 6. At this stage of the case, and construing

6

Plaintiff's allegations as true, the Court cannot conclude that Plaintiff received a sufficient initial level of process, as Plaintiff only received the vague statement that the SAMs were to be imposed based upon Plaintiff's "proclivity for violence." *Id.* This vague statement does not satisfy the requirement that a "reasoned examination of the assignment" be provided to Plaintiff. *DiMarco*, 473 F.3d at 1342. Accordingly, this factor weighs in favor of Plaintiff.

Second, the Court must consider whether prison officials provided "the opportunity for the inmate to receive notice and respond to the decision . . . ." *DiMarco*, 473 F.3d at 1342. As previously stated, Plaintiff has alleged that he was informed on the same day that the SAMs were imposed that they were in effect immediately. *Amended Complaint* [#8] at 6. He further alleges that he "has never received notice of the factual basis for the imposition of the SAMS — nor has [he] been provided a fair opportunity for rebuttal." *Id.* The Court finds that providing Plaintiff notice that the SAMs were to be imposed on the same day that they were allegedly put into effect, and providing only a vague statement as justification for their imposition, does not provide Plaintiff effective or adequate notice.[2] In regard to whether Plaintiff had an opportunity to respond to the decision, Defendants argue that Plaintiff "had the opportunity to challenge the SAMs using the BOP's administrative remedy program, and that he did so, presenting his objections to the SAMs at several

---

[2] The Court notes that there appears to be some confusion over when the SAMs were actually put into effect. Attached to Plaintiff's original Complaint [#3] at Exhibit A is a copy of the SAMs dated January 24, 2006. This leads the Court to the conclusion that the SAMs were actually implemented prior to February 6, 2006, the date that Plaintiff alleges he received notice. Regardless of whether the SAMs were imposed on January 24, 2006 or February 6, 2006, it remains the case that Plaintiff has alleged that he did not receive adequate notice prior to their imposition.

7

levels of administrative review." *Motion* [#25] at 9. Defendants argue that because Plaintiff is required to exhaust his remedies using the BOP administrative remedy program, that "[t]his process provides a sufficient level of procedural due process to address Plaintiff's restrictions." *Id.* at 10. However, Plaintiff argues that due process requires that the "hearing must be at a meaningful time and in a meaningful manner." *Response* [#53] at 12 (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). He further argues that "defendants try to argue that any type of hearing even if it's just a formality or happened after word [sic] will satisfy the law." *Id.*

While Defendants contend that "Plaintiff was clearly provided an opportunity to be heard (through the Administrative Remedy Program) as to his views regarding the restrictions . . . . [and] [t]his is all that is required for procedural due process," the Court does not agree that the administrative remedy program is "all that is required" to satisfy procedural due process. *Motion* [#25] at 11. That is, Plaintiff is correct that "'[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Lawrence v. Reed*, 406 F.3d 1224, 1233 (10th Cir. 2005) (quoting *Mathews*, 424 U.S. at 333). It does not appear that the administrative remedy program provided Plaintiff with the opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.* Indeed, in the Regional Administrative Remedy Appeal attached to Plaintiff's Original Complaint [#3], the reviewing official acknowledges that the remedy sought by Plaintiff is for the SAMs to be removed in their entirety. *Complaint* [#3] at 72. The reviewing official then states, "the Bureau of Prisons neither imposes nor rescinds the SAMs, [instead] it implements the restrictions contained within." *Id.* Considering that Plaintiff seeks removal of the SAMs, and that the administrative remedy program is not

8

empowered to provide him with this relief, it does not appear that use of the program provided Plaintiff with the opportunity to be heard "in a meaningful manner." *Lawrence*, 406 F.3d at 1233.

The Court is aware that in *Yousef v. Reno*, 254 F.3d 1214 (10th Cir. 2001), the Tenth Circuit held that a plaintiff must exhaust his administrative remedies before challenging SAMs in federal court. Indeed, while *Yousef* affirmed that, pursuant to the PLRA, prisoners must exhaust their administrative remedies, it also noted that while the administrative remedy program "may address fairness grievances that do not implicate the general invalidity of the SAMS . . . . [it is unable] to address challenges to the SAM's overall validity . . . ." 254 F.3d at 1222. Therefore, although there is no doubt that Plaintiff is required by *Yousef* to exhaust his available administrative remedies prior to filing suit in federal court, the Court does not believe that this process truly provides Plaintiff with a meaningful opportunity to be heard. That is, he cannot obtain the relief that he seeks – that the SAMs be removed – through his use of the administrative remedy program. Moreover, while Defendants rely on *Travieso v. Fed. Bureau of Prisons, Warden*, for the proposition that "the BOP's administrative remedy process provide[s] [a plaintiff] with any required due process," the Court does not find that this holding is applicable to the instant case. *Reply* [#55] at 4 (citing *Travieso v. Fed. Bureau of Prisons*, 217 Fed. Appx. 933, 935 (11th Cir. 2007) (unpublished decision)). In *Travieso*, the inmate sought reinstatement of a 68-day credit against his sentence that had been revoked by prison officials. 217 Fed. Appx. at 934. It is clear that the administrative remedy program provided the *Travieso* plaintiff with the opportunity to be heard in a meaningful manner, as the BOP had the power to reinstate the 68-day credit if it had found the plaintiff's claims to have merit. However,

9

in the instant case, Plaintiff has alleged that the BOP does not have the power to remove the SAMs, which is the only relief that Plaintiff seeks. Moreover, unlike the procedures found to be constitutionally adequate in *Wilkinson*, the current regulations allowing for the implementation of SAMs do not appear to provide for "multiple levels of review for any decision . . . with power to overturn the recommendation at each level." 545 U.S. at 227. Accordingly, accepting all of Plaintiff's allegations as true and construing them in the light most favorable to him, the Court finds it plausible that he could show he was not provided with both notice and the opportunity to respond, as required by *Wilkinson*, 545 U.S. at 226 and *DiMarco*, 473 F.3d at 1342. Therefore, this factor also weighs in favor of Plaintiff.

Finally, the Court must consider whether safety and security concerns were weighed as part of Plaintiff's placement decision. *DiMarco*, 473 F.3d at1342. The Attorney General has adopted the SAMs "based upon information of [Plaintiff's] proclivity for violence." *Complaint* [#3] at 55. Assuming that more support for this vague statement will be provided at a later stage in the case, the Court finds that it is plausible that safety and security concerns were weighed when the SAMs were imposed on Plaintiff. Therefore, this factor does not weigh in favor of Plaintiff.

Two of the three factors provided in *DiMarco* weigh in favor of Plaintiff. Accordingly, accepting all of Plaintiff's allegations as true and construing them in the light most favorable to him, as required, I find it plausible that Plaintiff could prove that not only does he have a protected liberty interest in avoiding implementation of SAMs, he was not accorded all the process he was constitutionally due prior to the implementation of the SAMs. As such, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss [#25] be **DENIED** insofar

as it seeks dismissal of Claim Two's Fifth Amendment due process allegations.

### 2. Claim Three - Fourth Amendment Violations

Plaintiff's Third Claim for Relief alleges that the SAMs violate his Fourth Amendment right to be free from "unreasonable search and seizure." *Amended Complaint* [#8] at 14. Plaintiff's Fourth Amendment claim is apparently brought in relation to his mail, as Plaintiff alleges that his English mail is delayed for periods of approximately four months, and that his non-English mail is delayed even longer. *Id.* at 7. Plaintiff also alleges that his newspaper and magazine subscriptions are limited, censored, and delayed for thirty days. *Id.* at 8. Defendants argue that "[t]o show an unreasonable search or seizure in violation of the Fourth Amendment, a party has the burden to show that when a search or seizure occurred, the party had a reasonable expectation of privacy." *Motion* [#25] at 11.

The Fourth Amendment protects people from unreasonable searches of their "persons, houses, papers, and effects." U.S. Const. amend. IV. To assert a violation of Fourth Amendment rights, the individual must demonstrate that he had an "expectation of privacy in the place searched, and that his expectation is reasonable." *United States v. Gordon*, 168 F.3d 1222, 1225 (10th Cir. 1999) (citing *Minnesota v. Carter*, 525 U.S. 83 (1998)). The Supreme Court has found that an expectation of privacy is reasonable if it is derived from a source "outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* (citing *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978)). The burden is on the individual to show that he had a reasonable expectation of privacy. *United States v. Conway*, 73 F.3d 975, 979 (10th Cir. 1995).

In regard to an inmate's expectation of privacy, the Supreme Court has held that

"[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984). In *Hudson*, the Supreme Court established that prisoners do not have any reasonable expectation of privacy in their prison cells or in articles that they have in their possession while in prison. *Id.* at 525-28. In addition, in relation to non-privileged prison mail, the Tenth Circuit has held that its "regulation by prison officials is 'essentially an administrative matter in which the courts will not intervene.'" *Gordon*, 168 F.3d at 1228 (citing *Wilkerson v. Warden of U.S. Reformatory, El Reno*, 465 F.2d 956 (10th Cir. 1972)). In *Gordon*, the Tenth Circuit found that an individual sending non-privileged, non-legal mail to an inmate had no reasonable expectation of privacy in that mail, as the prison regulations provided that such mail may be inspected at any time. *Id.* Likewise, in *United States v. Walton*, 935 F. Supp. 1161, 1164-65 (D. Kan. 1996), the court held that a prisoner had no reasonable expectation of privacy in non-legal, non-privileged mail once he gave it to a prison official to deliver.

Plaintiff has not alleged specific facts suggesting that he has a reasonable expectation of privacy in his non-privileged, non-legal mail. Neither does Plaintiff allege that his privileged mail has been reviewed by prison officials. Accordingly, accepting all the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the Plaintiff, I find that Plaintiff fails to sufficiently allege any reasonable expectation of privacy in non-privileged, non-legal mail. *See Gordon*, 168 F.3d at 1228; *Walton*, 935 F. Supp. at 1164-65.

Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss [#25] be

**GRANTED** to the extent that it seeks dismissal of Plaintiff's Fourth Amendment Claim.

### 3. Claim Four - Eighth Amendment Violations

Plaintiff's Fourth Claim for Relief alleges that the SAMs violate his Eighth Amendment right to be free from cruel and unusual punishment. *Amended Complaint* [#8] at 15. Plaintiff alleges that the SAMs prevent him from "talking to other inmates" such that Plaintiff spends "months without talking or communicating with other humans except BOP officials." *Id.* at 9.

The Eighth Amendment requires prison officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citation omitted). An Eighth Amendment claim has both an objective and subjective element. *Id.* The objective component requires that the alleged deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). However, prison conditions may be "restrictive and even harsh" without a constitutional violation occurring. *Barney*, 143 F.3d at 1311 (citation omitted). That is, "only those deprivations denying the minimal civilized measures of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (internal citation omitted). To satisfy this element, the inmate must allege facts showing a deprivation of "a single, identifiable human need such as food, warmth, or exercise . . . ." *Id.* at 304.

The subjective component is satisfied only if the "'[prison] official knows of and disregards an excessive risk to inmate health and safety.'" *Barney*, 143 F.3d at 1310

(quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "It is not enough to establish that the official should have known of the risk of harm." *Id.* Instead, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 838. When considering these components, the Court's inquiry turns not only on the severity of the alleged deprivation, but also on its duration. *See Barney*, 143 F.3d at 1311 ("An important factor in determining whether the conditions of confinement meet constitutional standards is the length of the incarceration.").

Plaintiff alleges that the SAMs prevent him from talking to other inmates, and that he goes for months without speaking to any persons besides BOP officials. *Amended Complaint* [#8] at 9. However, Plaintiff's Amended Complaint is devoid of allegations that he has been deprived of "a single, identifiable human need such as food, warmth, or exercise." *Wilson*, 501 U.S. at 304. Although Plaintiff has alleged that his confinement is very solitary in nature, in that he does not speak to anyone but prison officials for long periods of time, this alone is not sufficient to state a claim for Eighth Amendment relief. *See Hill v. Pugh*, 75 Fed.Appx. 715, 721 (10th Cir. 2003) (unpublished decision) (finding that prisoner's allegations that he was subjected to isolation in his cell did not state a claim for violation of the Eighth Amendment where prisoner admitted that his minimal physical requirements for food, clothing and shelter were met). That is, "[t]o the extent that [an inmate's] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Moreover, "[m]ere 'inactivity, lack of companionship and a low level of intellectual stimulation do not constitute cruel and unusual punishment." *Caldwell v. Miller*, 790 F.2d

589, 601 n.16 (7th Cir. 1986) (citation omitted). Therefore, the conditions of confinement Plaintiff alleges do not constitute the sort of "significant departure from the healthy habilitative environment the [government] is required to provide its inmates." *Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996) (citation omitted); *see also Ruark v. Solano*, 928 F.2d 947, 949 (10th Cir. 1991) (holding that an inmate's allegations that his cell was small and noisy, that his movement outside his cell was severely restricted, and that he enjoyed very limited visitation did not state an Eighth Amendment claim); *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (inmate must be provided with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utitilies (i.e., hot and cold water, light, heat, plumbing)"). Plaintiff has failed to allege that his deprivation is objectively "sufficiently serious" such that he could state an Eighth Amendment claim. *Wilson*, 501 U.S. at 298.

Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss [#25] be **GRANTED** to the extent that it seeks dismissal of Plaintiff's Eighth Amendment Claim.

### 4. Claim Five - Sixth Amendment Violations

Plaintiff's Fifth Claim for Relief alleges that the SAMs violate his Sixth Amendment right to counsel. *Amended Complaint* [#8] at 16. Plaintiff alleges that, pursuant to the SAMs, "no correspondences are allowed with lawyers, law advocates and constitutional rights institutes to ask for their help . . . ." *Id.* at 9.

It is well established that "[t]he protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'" *Austin v. United States*, 509 U.S. 602, 608 (1993) (citing *United States v. Ward*, 448 U.S. 242, 248 (1980)). That is, the "literal

language of the [Sixth] Amendment, . . . requires the existence of both a 'criminal prosecutio[n]' and an 'accused,' . . . ." *United States v. Gouveia*, 467 U.S. 180, 188 (1984). Plaintiff does not allege that the SAMs subject him to criminal prosecution, nor that he was deprived of a lawyer in any criminal prosecution. Instead, his Complaint alleges that Plaintiff would like to find a lawyer to assist him in his civil lawsuit, and that the SAMs may hinder him from doing so. *Amended Complaint* [#8] at 9, 16. Therefore, as Plaintiff has failed to allege the existence of a "criminal prosecution and an accused," he fails to state a plausible claim for Sixth Amendment relief. *Gouveia*, 467 U.S. at 188.

Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss [#25] be **GRANTED** to the extent it seeks dismissal of Plaintiff's Sixth Amendment Claims.

However, as Defendants point out, Plaintiff's Fifth Claim for Relief could be liberally read to assert that the restrictions imposed by the SAMs deprive Plaintiff of his right to access the courts pursuant to the protections provided by the First Amendment. *See Amended Complaint* [#8] at 16. In light of Plaintiff's *pro se* status, the Court will also consider Plaintiff's Fifth Claim for Relief under the rubric provided by the First Amendment for access to the courts.

To set forth a claim of denial of access to the courts, a plaintiff must plead and prove that he actually was impeded in his ability to conduct a particular case. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996). That is, an inmate must satisfy the standing requirement of "actual injury" by showing that the denial of legal resources hindered his efforts to pursue a non-frivolous claim. *Id.* at 349-53. Additionally, the right of access to the courts extends only as far as protecting an inmate's ability to prepare initial pleadings in a civil rights action

regarding his current confinement or in an application for a writ of habeas corpus. *See Wolff*, 418 U.S. at 576; *Carper v. Deland*, 54 F.3d 613, 617 (10th Cir. 1995).

Plaintiff has not alleged that the denial of access to an attorney imposed by the SAMs has hindered him in preparing his initial pleadings in a civil rights action or an application for a writ of habeas corpus regarding his current confinement. Indeed, Plaintiff has filed the instant Complaint, belying any claim that the SAMs have prevented him from pursuing a civil rights claim. Accordingly, to the extent that Plaintiff's Fifth claim may be construed as a First Amendment claim for access to the Courts, I find that Plaintiff fails to state a plausible claim for First Amendment relief. *See Lewis*, 518 U.S. at 349; *Wolff*, 418 U.S. at 576.

Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss [#25] be **GRANTED** to the extent it seeks dismissal of any potential First Amendment access to the courts claim contained in Plaintiff's Fifth Claim for Relief.

IV. **Conclusion**

As set forth above, I respectfully **RECOMMEND** that **Defendants' Motion to Dismiss** [Docket No. 25; Filed May 19, 2008] be **GRANTED IN PART AND DENIED IN PART**. Accordingly, I **RECOMMEND** the following:

(1) that the Motion to Dismiss be **DENIED** insofar as it seeks dismissal of Claim Two's Fifth Amendment due process allegations;

(2) that the Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Claim Three's Fourth Amendment allegations for failure to state a claim upon which relief can be granted;

(3) that the Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Claim Four's Eighth Amendment allegations for failure to state a claim upon which relief can be granted;

(4) that the Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Claim Five's Sixth Amendment allegations for failure to state a claim upon which relief can be granted;

(5) that the Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Claim Five's First Amendment access to the court allegations for failure to state a claim upon which relief can be granted.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

Dated: November 3, 2008