IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 07-cv-02698-WDM-KLM

AHMED ABDEL SATTAR,

    Plaintiff,

v.

ALBERTO GONZALES, *et al.*,

    Defendants.

## ORDER ON MAGISTRATE JUDGE RECOMMENDATION

Miller, J.

    This matter is before me on a recommendation by Magistrate Judge Kristen L. Mix (Docket No. 63), issued November 3, 2008, recommending that Defendants' Motion to Dismiss (Docket No. 25) be granted in part and denied in part. Both parties have filed timely objections to the recommendation and, therefore, are entitled to *de novo* review of the portions of the recommendation to which objection was made. 28 U.S.C. § 636(b); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). I must construe Plaintiff's pleadings liberally and hold him to a "less stringent standard" because he is proceeding *pro se*. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972))). For the reasons set forth below, I accept with some modification Magistrate Judge Mix's recommendation.

Background

Plaintiff is currently serving a twenty-four year sentence for (1) conspiracy to defraud the United States Government; (2) conspiracy to murder in a foreign country; and (3) solicitation of a crime of violence. Until February 2006, Plaintiff was serving his time as a general inmate at the New York Metropolitan Correctional Center ("MCC"). On February 2, 2006, however, Plaintiff was placed in the restricted high security ward at MCC. He was informed that Special Administrative Measures ("SAMs"), *see* 28 C.F.R. § 501.3(c), had been implemented against him and provided a copy of the SAMs. The SAMs were dated January 24, 2006. The SAMs were allegedly extended twice for one year periods in February 2007 and February 2008. On December 19, 2007, Plaintiff was transferred to the Administrative Maximum facility ("ADX") in Florence, Colorado. He alleges that while at ADX and under the SAMs he is subjected to deprivations of his constitutional rights including that his mail, both incoming and outgoing, is delayed while FBI agents review it; he is prohibited from communicating with non-immediate family members in Egypt; he is denied access to newspapers and magazines; his contact with his lawyers is restricted; he is not allowed to participate in Muslim group prayer; he is not allowed to access certain TV or radio stations; and he is prohibited from communicating with other inmates.

Plaintiff administratively appealed the extension of and overall imposition of the SAMs on February 8, 2007 by filing a request for administrative remedy pursuant to the Administrative Remedy Program ("ARP"). (*See* Docket No. 3 at 69.) On March 1, 2007 R. Wiley, the ADX Warden, denied the request for administrative remedy, concluding that because Plaintiff continued to pose a threat to national security the SAMs were

extended. (*See* Docket No. 3 at 70.) Plaintiff appealed this decision on March 6, 2007 arguing that he was not a threat to national security and that the Warden did not address his claim that the SAMs violated his constitutional rights. (*See* Docket No. 3 at 71.) The appeal was denied on April 9, 2007 by Michael K. Nalley, the Regional Director of the North Central Regional Office of the Bureau of Prisons. (*See* Docket No. 3 at 72.) The denial stated that "[w]hile the Bureau of Prisons neither imposes nor rescinds SAMs, it implements the restrictions contained within." *Id.* It further provided that because Plaintiff provided no new information to support his request of removal of the SAMs and "the U.S. Attorney General has determined your particular SAMs are necessary, they will not be removed or modified at this time and will remain in effect until such time the Attorney General determines they are no longer warranted." *Id.* On April 23, 2007 Plaintiff appealed this decision to the Central Office arguing that he had provided new information supporting removal of the SAMs, namely that he was incarcerated without SAMs for almost four years and did not do anything to cause the imposition of the SAMs and that he has not been provided a hearing on the imposition of the SAMs. (*See* Docket No. 3 at 73.) The appeal was denied on June 28, 2007 by Harrell Watts, Administrator of the National Inmate Appeals. (*See* Docket No. 3 at 74.) The denial stated that "a hearing prior to imposition is not required" and that Plaintiff may "object to the provisions of the SAMs, but . . . the Bureau merely informs you of the requirements of the SAMs, and ensures the measures are followed." *Id.* It went on to state that the SAMs are reviewed annually by the Attorney General and "will remain in place until the AG determines they are no longer necessary." *Id.*

      Plaintiff filed this action in December 2007. On February 29, 2008, he filed an

amended complaint setting forth five claims for relief: (1) First Amendment violations; (2) Fifth Amendment due process violations; (3) Fourth Amendment violations; (4) Eighth Amendment violations; and (5) Sixth Amendment violations. (*See* Docket No. 8.) Plaintiff seeks only injunctive relief in the form of removal of the SAMs. *See id.* On May 19, 2008, Defendants moved to dismiss Plaintiff's second, third, fourth, and fifth claims for relief. (*See* Docket No. 25.)

## Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

In this case, Magistrate Judge Mix recommends that the motion to dismiss be granted with respect to Plaintiff's third, fourth, and fifth claims but denied with respect to Plaintiff's second claim. Plaintiff objects to Magistrate Judge Mix's recommendation

regarding his fourth claim. (*See* Docket No. 70.) Defendant objects to Magistrate Judge Mix's recommendation regarding Plaintiff's second claim for relief. (*See* Docket No. 65.)

1.  Claim Three (Fourth Amendment) and Claim Five (Sixth Amendment)

In regard to Plaintiff's third and fifth claims, the claims that have not been objected to, I have reviewed Magistrate Judge Mix's recommendation and discern no error in either the legal authority or the analysis. Magistrate Judge Mix concluded that Plaintiff's Fourth Amendment claim (Claim Three) should be dismissed because Plaintiff could not show a legitimate expectation of privacy in his non-legal mail. *See United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999) ("In the case of unprivileged incoming and outgoing prison mail, regulation by prison officials is 'essentially an administrative matter in which the courts will not intervened.'" (quoting *Wilkerson v. Warden of U.S. Reformatory, El Reno*, 465 F.2d 956 (10th Cir. 1972))). She further determined that Plaintiff had not alleged that his privileged mail has been reviewed by prison officials. Indeed, although Plaintiff alleges that "[t]he SAMs classify the plaintiff's incoming and outgoing mail to Federal Courts, Judges, U.S. Attorneys, members of Congress, the BOP, and Federal Law inforcement [sic] agencies as non-legal mail that must be routed through defendants [sic] unknown F.B.I. Agents", he does not allege that his privileged legal mail, *i.e.* communications with his attorney, are subject to FBI inspection. Therefore, I agree with Magistrate Judge Mix that Plaintiff's Fourth Amendment claim should be dismissed for failure to state a claim.

Magistrate Judge Mix recommended that Plaintiff's Sixth Amendment claim (Claim Five) be dismissed because the Sixth Amendment's right to counsel is limited to

criminal prosecutions and does not extend to civil actions, which is the only type of case Plaintiff alleges he is involved in at this time. *See Austin v. United States*, 509 U.S. 602, 608 (1993) ("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'"); *United States v. Gouveia*, 467 U.S. 180, 188 (1984) (acknowledging that the Sixth Amendment's right to counsel "requires the existence of both a 'criminal [prosecution]' and an 'accused,'" (alteration in original)); *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1169 (10th Cir. 2003) ("[P]laintiffs have no Sixth Amendment right to counsel in a civil case." (citing *Cullins v. Crouse*, 348 F.2d 887, 889 (10th Cir. 1965))); *Ford v. Cummings*, 229 F.3d 1163, 2000 WL 1199118, at *2 (10th Cir. 2000) (unpublished)[1] ("[P]laintiff has no constitutional right to counsel in a *Bivens* action." (citing *MacCuish v. United States*, 844 F.2d 733, 735 (10th Cir.1988))). Furthermore, liberally reading Plaintiff's complaint, Magistrate Judge Mix also analyzed Plaintiff's Sixth Amendment claim as a claim that the SAMs deprive Plaintiff of his right of access to the courts protected by the First Amendment. Magistrate Judge Mix determined, however, that any such claim should also be dismissed as Plaintiff has not demonstrated that he was actually impeded in his ability to conduct a particular case. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that an inmate must establish that he was hindered in his pursuit of a legal claim to sustain a constitutional claim under the First Amendment); *Wardell v. Maggard*, 470 F.3d 954, 959 (10th Cir. 2006) (noting that under *Lewis* a plaintiff must make a showing of prejudice to sustain a First

---

[1] Although the Tenth Circuit does not allow citation to unpublished opinions for precedential value, unpublished opinions may be cited for persuasive value. 10th Cir. R. 32.1.

Amendment claim, *i.e.* that a legal claim has been frustrated, impeded, or hindered (quoting *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005))). I agree with Magistrate Judge Mix conclusions regarding Plaintiff's Sixth Amendment claim and/or First Amendment access to the courts claim.

2.  Claim Four (Eighth Amendment)

With respect to Plaintiff's Eighth Amendment claim (Claim Four), Magistrate Judge Mix recommends that the claims be dismissed because Plaintiff has not demonstrated a sufficiently serious deprivation. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ("[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981))). She concluded that Plaintiff's allegation that he was prevented from talking to other inmates such that he goes for months without speaking to anyone besides the Bureau of Prisons officials was insufficient to establish an Eighth Amendment claim because he had not alleged that he had been deprived of a "single identifiable human need." *See id.* at 298 (requiring there to be a deprivation of a "single identifiable human need such a food, warmth, or exercise"); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984))); *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (holding that to constitute an Eighth Amendment violation, "[t]he official's act or omission must result in the denial of 'the

minimal civilized measure of life's necessities'" (quoting *Farmer*, 511 U.S. at 832)). I agree. Plaintiff has indeed not alleged a deprivation of any recognized identifiable human need. Without deciding whether complete isolation would constitute an Eighth Amendment violation, Plaintiff's complaint indicates he has contact with family and attorneys and the severe limitations of ADX confinement do not alone constitute such a deprivation. *See Hill v. Pugh*, 75 Fed. Appx. 715, 720–21 (10th Cir. 2003) (unpublished) (holding that an inmate failed to state an Eighth Amendment claim when the inmate alleged that he was "isolated in his cell twenty-three hours a day for five days a week and twenty-four hours the remaining two days" and incurred "sensory deprivation" therefrom).

Plaintiff further objects to Magistrate Judge Mix's recommendation regarding his Eighth Amendment claim (Docket No. 70) arguing that the Eighth Amendment standard is not static and must evolve with society's evolving views of humanity, dignity, and decency. Therefore, he cites to international law in arguing that he has made out an Eighth Amendment violation by alleging deprivation of human contact. Although I appreciate that what constitutes cruel and unusual punishment is reflective of society's views of decency, which may include consideration of international law, United States jurisprudence is clear that to sustain an Eighth Amendment deprivation claim, a plaintiff must demonstrate that he has been deprived of a basic human need. *See Wilson v. Seiter*, 501 U.S. at 304 (quoting *Rhodes*, 452 U.S. at 347); *Farmer*, 511 U.S. at 832 (quoting *Hudson*, 468 U.S. at 526-527); *Tafoya*, 516 F.3d at 916 (quoting *Farmer*, 511 U.S. at 832); *Hill*, 75 Fed. Appx. at 720–21. This is the law I must follow and Plaintiff has not made this showing.

3. Claim Two (Fifth Amendment)

Magistrate Judge Mix recommends that the motion to dismiss be denied with respect to Plaintiff's Fifth Amendment claim (Claim Two) because Plaintiff possessed a protected liberty interest[2] and that the procedures used in addressing his liberty interest were inadequate. *See Moore v. Bd. of County Comm'rs*, 507 F.3d 1257, 1259 (10th Cir. 2007) ("'We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989))). In particular, Magistrate Judge Mix concluded that Plaintiff was not provided with either a sufficient level of initial process or notice and a meaningful opportunity to be heard. *See Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1344 (10th Cir. 2007) ("Due process was satisfied as long as a state allowed (1) a sufficient initial level of process, i.e., a reasoned examination of the assignment; (2) the opportunity for the inmate to receive notice and respond to the decision; and (3) safety and security concerns to be weighed as part of the placement decision." (citing *Wilkinson v. Austin*, 545 U.S. 209, 226–27 (2005))).

Regarding initial process, Magistrate Judge Mix determined that Plaintiff did not receive the required "reasoned examination of the assignment" because he "only received the vague statement that the SAMs were to be imposed based upon Plaintiff's 'proclivity for violence.'" (Docket No. 63 at 7.) Defendants object to this conclusion

---

[2] For purposes of their motion to dismiss only, Defendants conceded that Plaintiff possesses a protected liberty interest. (*See* Docket No. 25 at 8 n.4.)

arguing that *DiMarco* does not require that the inmate be provided with the "reasoned examination of the assignment", only that a "reasoned examination of the assignment" be undertaken. Although Defendants are correct that *DiMarco* does not expressly require an inmate be advised of the reasons behind his assignment as part of the first prong, I conclude that notice to an inmate regarding the basis for his SAMs is, at least, a factor in the second *DiMarco* prong—notice and an opportunity to be heard. Therefore, I agree with Magistrate Judge Mix's analysis under the second *DiMarco* prong that Plaintiff has alleged facts sufficient to survive a motion to dismiss demonstrating that he was not provided adequate notice of the basis for the SAMs.

With respect to notice and a meaningful opportunity to be heard, as noted above Magistrate Judge Mix determined that providing Plaintiff the vague statement regarding the basis for the SAMs was not sufficient to provide adequate notice to Plaintiff. Furthermore, Magistrate Judge Mix concluded that the ARP did not provide Plaintiff with a meaningful opportunity to be heard "in a meaningful manner" because the ARP was not empowered to rescind the SAMs—the only remedy Plaintiff seeks. Magistrate Judge Mix relied on *Yousef v. Reno*, 254 F.3d 1214, 1222 (10th Cir. 2001), which held that the ARP was not authorized to "address challenges to the SAM's overall validity" although it "may address fairness grievances that do not implicate the general invalidity of the SAMs." In their objection, Defendants argue that the ARP does provide a meaningful opportunity to be heard because the specific SAMs may be appealed under the ARP. *See* 28 C.F.R. § 501.3(e) ("The affected inmate may seek review of any special restrictions imposed in accordance with paragraph (a) of this section through the Administrative Remedy Program, 28 CFR part 542."). They argue that *Yousef* only

holds that the ARP does not provide a means by which an inmate can challenge the constitutionality of SAMs overall and does not stand for the proposition that an inmate cannot challenge his specific SAMs through the ARP.  Defendants contend, therefore, that because Plaintiff was contesting the SAMs as they were specifically applied to him, the ARP provided an adequate opportunity to be heard.

I agree with Defendants that the relevant regulations provide that an inmate can challenge his SAMs under the ARP, 28 C.F.R. § 501.3(e), and that *Yousef* distinguishes between challenging the specific SAMs and the constitutionality of SAMs in general, *see* 473 F.3d at 1344.  However, in this particular instance, the ARP did not provide an opportunity for Plaintiff to challenge the specific SAMs as they were applied to him.  The responses to his administrative appeals all indicated that the BOP would not engage in any reduction, alteration, or recision of the specific SAMs and that the determination of the SAMs was left to the Attorney General.  As Plaintiff was afforded no avenue to appeal to the Attorney General, he was not provided with a meaningful opportunity to be heard.  Therefore, despite the apparent statutory authority of the ARP to provide Plaintiff an opportunity to be heard, such opportunity was completely denied in this case.[3]

Accordingly, it is ordered:

1. The recommendation of Magistrate Judge Mix (Docket No. 63), issued November 3, 2008, is accepted as modified.

2. Defendant's Motion to Dismiss (Docket No. 25) is granted in part and denied in

---

[3] I note that Defendants also argue that Magistrate Judge Mix's recommendation should not be accepted because she mistakenly requires that Plaintiff be provided pre-deprivation review.  I do not, however, read Magistrate Judge Mix's recommendation as being based on a failure of Defendants to provide Plaintiff with pre-deprivation hearing.  Therefore, I decline to address this argument.

part.

3. Plaintiff's Third, Fourth, and Fifth claims for relief are dismissed with prejudice.

4. Plaintiff's First and Second claims remain pending.


DATED at Denver, Colorado, on March 6, 2009.
                BY THE COURT:


                s/ Walker D. Miller
                United States Senior District Judge